Eugene TWITTY, Petitioner-Appellant,

v.

Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent-Appellee.

No. 285, Docket 79–2120.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1979.

Decided Dec. 11, 1979.

Richard I. Rosenkranz, Brooklyn, N. Y., for petitioner-appellant.

Donald Sticklor, Deputy Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Sol. Gen., New York City, on brief), for respondent-appellee.

Before GURFEIN, VAN GRAAFEILAND and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Eugene Twitty, a state prisoner, appeals from a judgment of the United States District Court for the Eastern District of New York (Mark A. Costantino, *Judge*), dismissing his petition for a writ of habeas corpus. The district court held that Twitty had exhausted his state remedies but that his claims lacked merit. We conclude that as to certain of his claims Twitty did not exhaust his remedies in the state court, and that the claims as to which he did exhaust his remedies do not justify the granting of the writ. Hence we affirm the district court's judgment.

I

Twitty was convicted of murder and felony murder in 1972 in New York Supreme

Court, Kings County. The case arose out of the robbery of a supermarket in Brooklyn in August 1971, during which the manager of the store was shot and killed by one of the robbers. The prosecution's case in chief rested principally on the testimony of two eyewitnesses to the robbery who identified Twitty as the robber who shot the store manager when the latter had difficulty in opening the safe, and on the testimony of a police officer who had arrested Twitty's alleged accomplices and, on the basis of their statements, searched out and eventually arrested Twitty. After presentation of the defense case, which included two alibi witnesses for Twitty, the prosecution called as a rebuttal witness one of Twitty's alleged accomplices who had pleaded guilty, who testified that Twitty had been one of the robbers and had shot the store manager.

Twitty was represented at trial by assigned counsel, Abraham Kartzman. Twitty claims that, for various reasons, Kartzman's performance was so inadequate that he was denied effective assistance of counsel at trial in violation of his rights under the Sixth Amendment to the Constitution.[1] The chronology of events that give rise to his claim is as follows.

The robbery and murder took place on August 24, 1971, in the presence of two eyewitnesses: a store guard, and an electrician who had been called to the store to make repairs. On September 8, 1971, police detective Patrick Cambridge arrested three suspects, including one Robert Smith, but not including Twitty, on charges of murder. After interrogating these three men, Cam-

bridge commenced to search for Twitty. Twitty was indicted on two counts, murder and felony murder, and was eventually arrested in Wichita Falls, Texas, on December 28, 1971.

On January 4, 1972, Twitty was arraigned in Brooklyn and Kartzman was assigned as his counsel. Kartzman made no pretrial procedural motions,[2] and the case was called for trial on January 26. At that time Twitty told the court that he wanted a different lawyer, complaining that "I don't think Mr. Kartzman here, have [sic] given me justice in my eyesight." The court declined to appoint other assigned counsel, but gave Twitty until the next day to retain counsel, indicating that any new counsel would be given a reasonable opportunity to prepare for trial. The next day, Twitty said that he had been unable to obtain other counsel. He reiterated his desire for counsel other than Kartzman, stating that Kartzman never believed anything Twitty said and would not listen to him. Twitty then attempted unsuccessfully to inform the court that he had been in the South during July and August 1971, but the court refused to go into the merits of the case. The court again declined to appoint other counsel, whereupon Twitty said he would represent himself. After being warned of the risks of proceeding *pro se*, however, he indicated that he would allow Kartzman to represent him.

On the following day, Friday, January 28, the State opened its case,[3] which included the testimony of the two eyewitnesses.[4]

1. Twitty also claims that, because of the brief period between his arraignment and the start of trial, he was denied a meaningful opportunity to obtain counsel of his own choosing. This claim was not raised in the district court and we do not consider it here. Moreover, we do not believe that Twitty has exhausted his state court remedies with respect to this claim since it does not appear that the state courts were fairly presented with the factual assertions made here as to Twitty's efforts to obtain private counsel prior to the eve of trial. *See, e. g., United States ex rel. Cleveland v. Casscles*, 479 F.2d 15 (2d Cir. 1973).

2. He did move that Twitty be sent to a psychiatric hospital for observation. The motion was

denied. (Trial Transcript [hereinafter "Tr. "] at 28–30.)

3. Defense counsel did not make an opening statement but did move for a mistrial because of certain allegedly prejudicial remarks made by the prosecutor in his opening statement. The motion was denied. (Tr. 40N–40O.)

4. Before the eyewitnesses testified, the prosecutor noted on the record that during a recess he had given defense counsel all of the grand jury minutes with respect to every witness to be called by the prosecution. Defense counsel stated that he had read them enough to proceed, although he had not been able to go

Both had seen the events at close range and both positively identified Twitty as the robber who shot the deceased.

The defense case began on Monday, January 31 with Twitty taking the stand in his own defense. He testified that he had been in North Carolina when the crime took place. After Twitty's testimony, Kartzman requested a recess until the next day to allow two alibi witnesses to come to New York, stating that he had been unaware until that morning that there would be alibi witnesses to substantiate Twitty's testimony. In light of the delay, the prosecutor asked to call Mrs. Twitty at that time as a rebuttal witness; defense counsel said he had no objection. Mrs. Twitty testified, and the case was adjourned to February 2.

When trial resumed, Twitty again asked for a change of lawyers and the request was again denied. Two alibi witnesses from North Carolina then testified for the defense. The prosecutor recalled Twitty for additional cross-examination and asked him, without objection, whether he had told Kartzman his alibi. Although Twitty appeared not to understand the term alibi, he testified that he had told Kartzman he was in North Carolina on August 24, 1971. The defense rested and the prosecutor then called Kartzman as a rebuttal witness. After Kartzman took the stand, was sworn in and identified himself, a side-bar conference was held, at which the prosecutor stated that he would ask Kartzman, *inter alia*, whether Twitty had told him about the alibi. The prosecutor adverted to Kartz-

man's statement two days earlier, out of the jury's presence, as to his ignorance of the alibi witnesses. Kartzman did not immediately object to testifying, but when the court pointed out that such a conversation would be privileged, Kartzman said that he would assert the attorney-client privilege. At that point, the prosecutor withdrew Kartzman as a witness.

Still out of the presence of the jury, the prosecutor stated that he would call as a rebuttal witness Robert Smith, one of Twitty's alleged accomplices in the robbery, who had pleaded guilty to felony murder on January 26. The prosecutor explained that he had not intended to call Smith and decided to do so only after he heard the unexpected alibi defense. He stated that during the Tuesday recess, he had offered to allow Smith, in return for his testimony, to withdraw his plea of guilty to felony murder and to plead to first-degree manslaughter, an offer Smith had accepted. After this explanation by the prosecutor, Kartzman moved for a mistrial, apparently on the ground that such rebuttal testimony was not permitted by New York Criminal Procedure Law ("CPL") § 260.30.[5] A colloquy ensued during which the court at first stated that it would "in all likelihood" grant a mistrial, and that the new trial would begin the same afternoon, although the court expressly recognized that special circumstances would justify permitting Smith to testify as a rebuttal witness. After hearing from the prosecutor, the court again adverted to the special circumstances that would justify

through them in complete detail. The court offered to give defense counsel more time to read them, if necessary. Later, at the beginning of cross-examination of one of the eyewitnesses, the prosecutor turned over to defense counsel the grand jury testimony of that witness. The court again offered defense counsel time to review the testimony.

5. CPL § 260.30 then provided in part as follows:

The order of a jury trial, in general, is as follows:

    1.  The jury must be selected and sworn.
    2.  The court must deliver preliminary instructions to the jury.
    3.  The people must deliver an opening address to the jury.

    4.  The defendant may deliver an opening address to the jury.
    5.  The people must offer evidence in support of the indictment.
    6.  The defendant may offer evidence in his defense.
    7.  The people may offer evidence in rebuttal of the defense evidence, and the defendant may then offer evidence in rebuttal of the people's rebuttal evidence. The court may in its discretion permit the parties to offer further rebuttal or surrebuttal evidence in this pattern. In the interest of justice, the court may permit either party to offer evidence upon rebuttal which is not technically of a rebuttal nature but more properly a part of the offering party's original case.

permitting Smith's testimony on rebuttal, and stated, "I want to make it clear that I am not stating that I will grant the application, but, rather, that I will give some consideration to it." The court reiterated that if the motion were pressed, "we will discharge this jury and impanel a new jury and commence the retrial immediately." Kartzman then informed the court that he was scheduled to embark shortly on a month-long vacation, that his tickets were already paid for, and that starting a second trial immediately would deprive him of his vacation. The trial judge insisted that any retrial would begin immediately. After conferring with Twitty, Kartzman finally withdrew the motion. The entire colloquy is set forth in the margin.[6]

**6.** MR. KARTZMAN: First, your Honor, I think it's obligatory on the part of the district attorney at this point to furnish me with a complete statement made by Mr. Smith in this court on January 26, 1972.

Second, your Honor, in view of the offer of proof made by Mr. Schmier on behalf of the People, in view of the fact that the original plea by Smith was before Justice Mollen, and in view of the statement made this morning before Justice Mollen, in all fairness to the defendant, I must ask for the withdrawal of a juror.

Now, if this be the strategy of the District Attorney, I cannot possibly see how this defendant can get a fair trial in view of what has occurred and I therefore ask for the withdrawal of a juror.

THE COURT: Before I rule on that, Mr. Kartzman, I will say to you that if you wish, and if the defendant joins in that application, that I will consider it for a few moments, but in all likelihood, I will grant the application, and we will start the trial again this afternoon at two o'clock.

Mr. Kartzman, this case will begin, if you wish to make your motion for the withdrawal of a juror, and a mistrial, on the grounds that you stated, that the Court would be inclined because I do think that in ordinary cases, in all fairness, that the People should present whatever evidence it has, whatever testimony you may have available to it on its direct case, all testimony it possesses, so that the defendant knows fully what the People's case is before the defendant proceeds with its defense.

This is in accord with the ruling of the Appellate Division, First Department, in the case of People v. Richardson, where the Appellate Division, while not proscribing the procedure which is sought to be followed here, nevertheless criticized a procedure by another District Attorney who utilized in rebuttal testimony which the Court believed should have been prsented [sic] on the direct case of the People.

However, in this instance, because of a special circumstance that existed, due in part to the fact that the People who had no notice of alibi defense, which in part was due to their own fault, perhaps, in not demanding notice of whether or not there was alibi defense, and in view of the special circumstance dealing with the plea that was entered by Mr. Smith, the Court believes that in the interest of justice, while circumstances are unusual, the People should be permitted to call Mr. Smith at this time.

But if you persist in your motion and the defendant joins in it with you, I would prefer to have a more proper procedure followed, a more orderly procedure followed, and we will discharge this jury and impanel a new jury and commence the retrial immediately.

MR. SCHMIER [prosecutor]: May I be heard, your Honor?

THE COURT: Yes.

MR. SCHMIER: Your Honor, the case in the Appellate Division, the District Attorney had his two witnesses who were detectives right from the start and he held them out strategically for rebuttal purposes.

There isn't a scintilla, there is no reason why just on a perfunctory motion, irreparable hardship should come to the District Attorney, because we have to bring back witnesses, one of whom is incarcerated, as your Honor knows, one of whom was taken away from his business for a number of days. Your Honor knows that we had no notice of alibi. Your Honor knows this cannot be strategy. Your Honor knows this entire thing broke yesterday—why in anybody's legal name would we permit me to have to go through the whole trial again, because the Appellate Division censured some District Attorney in another department who had the two witnesses ab initio, and who—they were police officers.

If your Honor says the ordinary process— you are just saying that there can't be any extraordinary circumstances, and I believe that it would be irreparable [sic] harm to start again.

THE COURT: Let me clarify my comments, because I made the rather lengthy statement a moment ago, which incorporated a number of thoughts.

In my view, in view of the circumstances of this case, I am prepared to proceed with this trial and permit the witness, Robert Smith, to be called by the People as a rebuttal witness. However, if Mr. Kartzman and the defendant pursue the application which was made a moment ago, a few moments ago, to declare a mistrial, I will give consideration to doing that, but I want to make clear that if I do decide to declare a mistrial, it would be only with one

condition, and that is that we proceed to a new trial immediately.

Now, I will determine that after I hear from Mr. Kartzman once more as to whether or not he and the defendant persist in their application. I want to make it clear that I am not stating that I will grant the application, but, rather, that I will give some consideration to it.

I want to know whether or not the defendant and counsel persist in their application for the withdrawal of a juror, for a mistrial, Mr. Kartzman.

MR. KARTZMAN: If it please the Court, I think you will remember when we first had one or two conferences in your chambers, I pointed out to you that the fact that I had been retained—not retained, but I had been appointed [sic] in this case, on January 4, 1972, at about 3:30 P.M., to say that it is most unusual from that date to today, we are practically finished with a trial in a charge as serious as this one, is putting it most midly [sic], but, in addition to me objecting in chambers to the fact that I felt that the other defendants, since their counsel had been appointed sometime in September or October of 1971, that they should be tried first.

I additionally pointed out to the Court that I have my tickets paid for and that I take a vacation once a year, and at my age, I need it, and I tell this Court, if part of the condition of you entertaining my motion is the fact that you are going to put me back on trial immediately, and in that way deprive me of my vacation, I will tell this Court right now I will not go to trial. My health must come first.

I came to my office at 5:30 this morning to prepare myself. How many attorneys do that? And I will tell this Court that by putting me back immediately on trial, it means the loss of my vacation, and I've already paid for my tickets.

I say to this Court that it would be unfortunate, but I would have to take my chances, and look forward to whatever punishment this Court may hand out in the future to me as an attorney, but under all of the circumstances, I cannot imagine either this Court or any Court punishing me in this way, when there are two other defendants' cases ready to go to trial.

THE COURT: First of all, Mr. Kartzman, as you should be aware, and I think you are aware, there were four defendants in this case originally. Because of the Bruton Six [sic; situation?] which existed—it was necessary to grant severance and have the four cases tried separately.

Mr. Smith's case was moved first, and he pleaded guilty. Mr. Williams' counsel was informed in the course of a conference at approximately eleven o'clock one morning that his case was going to be moved, at 2:00 P.M. that afternoon, and then between 11:00 A.M. and 2:00 P.M. counsel for Mr. Williams was injured and sent word to the Court and subsequently followed with a medical certificate which indicated he had in fact been the victim of an accident and was injured and could not proceed to trial that afternoon.

Mr. Alexander's counsel, the third other co-defendant in this case, pursued a number of legal remedies which he had a right to do, and which precluded that case proceeding. This case was ready for trial.

You stated to the Court that you were ready to proceed. You also stated to the Court that if this case was not tried at this time, that you had plans to go away for an entire month and would not be able to be available for a period of what amounted to at least six weeks, between the month that you state you were going to be away and the time that preceded your departure.

Under the circumstances, this case was moved by the People. I have not heard one statement of fact about your health, let's get that clear, Mr. Kartzman, either informally or on the record. You never raised the issue of your health. You look to me to be a very vigorous man, whose appearance much belies your age.

MR. KARTZMAN: Thank you.

THE COURT: And if it is necessary, perhaps, to delay one's vacation, as has been known to happen in many instances, this Court has accepted assignments on short notice, when I was supposed to be away for a Christmans [sic] vacation for seventeen days and I was called by the presiding justice and asked to volunteer to handle Criminal Part 1 for the duration of that month. I did so without any sense of great injustice to myself, or any sense of great sacrifice on my part. And I don't think there's any reason why, if it's necessary, that you cannot delay your vacation for a couple of days, but that is your decision to make.

I asked a simple question. I would like a direct answer, so I can make an appropriate ruling. Are you persisting in your application for a mistrial and does your client join in it?

MR. KARTZMAN: May I confer with him for a moment?

THE COURT: Yes, sir, I wish you would. Mr. Kartzman.

MR. KARTZMAN: Your Honor, after conferring with the defendant—

THE COURT: I just want to say again, I think you are well aware if there's the slightest question of health or medical condition, obviously I would not put you to the task I've suggested, as I think you were present in this courtroom early today when upon application made by other counsel, the Court relieved that counsel for medical reasons, and the case which the District attorney was most anxious to proceed to trial immediately upon the conclusion of this trial.

The Court tries at all times to give consideration to the health and condition of counsel on either side, but I just wanted to make that clear. Now you may proceed.

Trial resumed immediately, and as a rebuttal witness Smith testified that he had seen Twitty shoot the store manager. On cross-examination Kartzman brought out that Smith's accomplices had threatened him before he pleaded guilty; that the Court had said it would give "favorable consideration" to Smith in sentencing if he pleaded guilty, depending on the contents of the probation report; that Smith would be permitted to withdraw his plea if dissatisfied with the sentence; that Smith had insisted on further consideration in return for testifying and would not have testified without the promised reduction of his plea to manslaughter; and that Smith had been a narcotics user for four or five years, and had used narcotics on the morning of the crime, on the day he confessed, and on the day he pleaded guilty. Because at least part of this cross-examination amounted to an attack on Smith's testimony as a recent fabrication, the prosecutor was permitted to bring out on redirect the fact that when Smith confessed on September 8, he gave essentially the same story, implicating Twitty as the murderer.

The jury, after deliberating for approximately twelve hours, found Twitty guilty on both counts. Twitty was sentenced on September 11, 1972, and remains incarcerated. His conviction was affirmed unanimously without opinion by the Appellate Division, Second Department, on January 16, 1975. On March 18, 1975, a motion for leave to appeal was denied by the New York Court of Appeals. Twitty was represented by new counsel on appeal.

## II

Twitty claims that Kartzman's performance before and during trial was so inadequate that he was denied the effective assistance of counsel guaranteed him under the Sixth Amendment. Specifically, he asserts that Kartzman

(a) failed to prepare for trial in that he did not adequately consult with his client, failed to pursue Twitty's alibi defense, and failed to make the usual pretrial motions;

(b) failed to move for a *Wade* hearing although identification was the key issue in the case;

(c) placed his own personal interest above his client's interest in receiving a fair trial;

(d) failed to object to testimony elicited by the prosecution that was in direct contravention of the attorney-client and husband-wife privileges;

(e) opened the door, by his inept cross-examination of Smith, to the prosecutor's use of Smith's prior confessions.

The threshold issue is whether available state court remedies have been exhausted as to any or all of these claims. 28 U.S.C. § 2254(b) (1976).

In order to exhaust his state remedies a petitioner must have "fairly presented" to the state court the same claim that is the basis for his petition for habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). This requires that the facts on which the defendant relies have been called to the attention of the state court, *e. g.*, *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15 (2d Cir. 1973), and that the state court be informed of the legal basis for the claim. *E. g.*, *Picard v. Connor, supra* ; *Johnson v. Metz*, 609 F.2d 1052 (2d Cir. 1979). The goal of these requirements, in the interest of federal-state comity, is simply to ensure that the federal courts not intrude upon state proceedings unless and until the state courts have been given a fair opportunity to consider and act upon the claims on which the habeas corpus petition is based.

We have reviewed the briefs submitted to the Appellate Division on Twitty's appeal [7] and conclude that Twitty has ex-

---

MR. KARTZMAN: Your Honor, after conferring with the defendant, I withdraw my motion for a mistrial.
(Tr. 311–20.)

7. With its affidavit in opposition to Twitty's petition, the State submitted to the district court the transcript of Twitty's trial, the minutes at arraignment and sentence, and the briefs on Twitty's direct appeal. This practice

hausted his remedies as to the claims that he was denied effective assistance of counsel (1) because of Kartzman's failure to move for a *Wade* hearing and (2) because of the withdrawal of the motion for mistrial. Point V of Twitty's Appellate Division brief argues, albeit briefly, that "[t]he failure of defense counsel to have a *Wade* hearing prejudiced the defendant's right to due process and effective assistance of counsel." Point VI argues that the "withdrawal [of the mistrial motion] by defense counsel because of purely personal reasons and prejudicial to the defendant, was a further violation of defendant's right to due process and to effective aid of counsel." While Twitty's new counsel did not expressly cite the Constitution or cite any authorities in support of these claims, the mention of "effective assistance of counsel" instantly calls to mind the Sixth Amendment's guaranty of the accused's right "to have the Assistance of Counsel for his defence." [8] We thus conclude that the brief fairly presented to the state court the substance of the Sixth Amendment claims insofar as they are based on the failure to move for a *Wade* hearing and the withdrawal of the mistrial motion. *See Callahan v. LeFevre,* 605 F.2d 70, 74 (2d Cir. 1979).

Any doubt we might otherwise have on this score is resolved by an examination of the State's brief in the Appellate Division. There the State observed that "counsel is attacked . . . directly in Points V and VI" of Twitty's brief, and argued that Twitty was not denied effective assistance of counsel. In support of its position the State cited not only state authorities, but also eight federal cases, including the leading case in this Circuit on the standard of

effectiveness required by the United States Constitution, *United States v. Wight,* 176 F.2d 376 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), and the more recent *United States v. Yanishefsky,* 500 F.2d 1327 (2d Cir. 1974). Since the State correctly understood in 1974 that Twitty's claim was at least partly based on the United States Constitution, we cannot accept its argument years later that the federal claim was not raised. *Cf. Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam) (in determining that state prisoner had exhausted his remedies, Court noted that the State's brief in state court proceedings had vigorously opposed the petitioner's constitutional claim).

■ Twitty has not, however, exhausted his state remedies as to his other claims presented here. The claim that counsel made a mockery of his representation of Twitty by failing to investigate Twitty's alibi defense does not appear to have been presented to the Appellate Division at all. And to the extent that the other alleged failings were adverted to in the Appellate Division, they were not there asserted to constitute ineffective assistance of counsel. The fact that effective assistance of counsel was mentioned in the contexts of a *Wade* hearing and the mistrial motion did not suffice to alert the state court to all of the claims Twitty raises here, and we find that these other claims were not fairly presented to the state court on the basis of denial of assistance of counsel. *Cf. Fielding v. LeFevre,* 548 F.2d 1102, 1107 (2d Cir. 1977). Petitioner remains free to pursue these other claims in state court.[9]

facilitates consideration of a habeas corpus petition, both in the district court and on appellate review. *See Kaplan v. Bombard,* 573 F.2d 708, 710 n.1 (2d Cir. 1978).

**8.** *Compare Johnson v. Metz, supra,* where petitioners' argument in the state court, that the trial judge's prejudicial conduct and constant interference deprived them of a fair trial, was held not to fairly alert the state court to their contention, asserted for the first time in federal court, that such conduct deprived them of due process. The claim made there was not one

which is generally thought to involve the United States Constitution; indeed, while not passing on the merits of the claim we said:

> We have been cited to no case, nor have we found any, in which the intervention of a trial judge in the conduct of trial has been found so prejudicial as to amount to a violation of constitutional due process.

*Id.* at 1056.

**9.** N.Y. CPL § 440.10(1)(h) (McKinney 1971) authorizes the court in which a judgment was entered to vacate the judgment on the ground

Consequently we will consider here the merits of only two claims: that Twitty's Sixth Amendment rights were violated by counsel's failure to move for a *Wade* hearing, and that those rights were violated by the withdrawal of the motion for a mistrial.

## III

The standard in this Circuit for determining lack of effective assistance of counsel is that set forth in *United States v. Wight, supra,* 176 F.2d at 379:

> [U]nless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus . . . .
>
> A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice.

Our Court has many times adhered to that standard, *e. g., United States v. Bubar,* 567 F.2d 192, 201–02 (2d Cir.) (and cases cited therein), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977), and has thus far declined the invitation to adopt the less stringent standards of other circuits, *e. g.,* *United States v. Yanishefsky, supra,* 500 F.2d at 1333 n.2. *See also Indiviglio v. United States,* 612 F.2d 624, 629 n.8 (2d Cir. 1979), and concurring opinion of Judge Mansfield, *id.* at 632; *United States v. Menendez,* 612 F.2d 51, 55 (2d Cir. 1979).[10]

■ Kartzman's failure to move for a *Wade* hearing does not amount to ineffective assistance of counsel. The purpose of a *Wade* hearing is to determine dehors the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification. *See United States v. Wade,* 388 U.S. 218, 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We have held that a petitioner who claimed that a failure to seek a *Wade* hearing with respect to a particular witness who was only one of several eyewitnesses to connect him to the crime, did not make a showing of ineffective assistance of counsel where he did not show that there was some basis for questioning the propriety of the out-of-court identification procedure. *United States v. Daniels,* 558 F.2d 122, 126 (2d Cir. 1977). *Compare Saltys v. Adams,* 465 F.2d 1023 (2d Cir. 1972).

There is nothing in the record before us which suggests that there was any pretrial identification of Twitty by the two eyewitnesses, either by way of line-up, or show-up,

---

that it was obtained in violation of a defendant's constitutional right. We note, however, that a § 440 motion must be denied if the "unjustifiable failure" of the defendant to raise the issue on direct appeal prevented adequate appellate review, *id.* § 440.10(2)(c), and that whether New York will grant collateral relief in a particular case is a matter of New York law to be decided by New York courts. *E. g., Johnson v. Metz, supra,* at 1055–56.

The State has assured us, both in its brief and at oral argument, that "[p]etitioner has an available state remedy under which he can pursue his claim, New York Criminal Procedure Law § 440.10(h) *[sic]*" (Brief at 31), although it declined to promise at oral argument that it would waive the § 440.10(2)(c) defense of "unjustifiable failure" in Twitty's case, as it has in some others. *See Hoover v. New York,* 607 F.2d 1040, 1042 (2d Cir. 1979); *cf. Brown v. Wilmot,* 572 F.2d 404, 406 (2d Cir. 1978) (Assistant Attorney General promised at oral argument that he would recommend that habeas corpus petition in state court not be opposed on procedural grounds). Our rule in this Circuit is that "[e]ven if there were some doubt as to the availability of relief in the New York courts, we still would give its courts the first chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available." *Wilson v. Fogg,* 571 F.2d 91, 95 (2d Cir. 1978) (quoting *United States ex rel. Bagley v. LaVallee,* 332 F.2d 890, 892 (2d Cir. 1964); *accord, Brown v. Wilmot, supra* at 406; *Hoover v. New York, supra* at 1042 ("even if the availability of state collateral relief is not utterly clear").

**10.** Twitty urges that we adopt a more lenient standard which requires, in essence, that a defendant show that his counsel has not provided even reasonably competent assistance. *See, e. g.,* cases cited in *Indiviglio v. United States, supra,* at 629 n.8. We feel that this case, like *Indiviglio,* would not be an appropriate vehicle for reevaluating our standard, since we conclude that, as to those claims whose merits are ripe for consideration here, Twitty has not met the more lenient standards.

or photographic array. Indeed, if either witness had so identified Twitty, the prosecutor would have been required to serve notice on Twitty of that fact, pursuant to New York CPL § 710.30, precisely in order to give Twitty an opportunity to move under CPL § 710.20(5) to suppress the eyewitness identification on grounds that it was tainted.[11] There is no indication in the record that the prosecutor served notice under section 710.30. Nor was there any reason to suspect there had been a previous identification by the eyewitnesses. This case did not present the common identification problem of the police arresting a suspect based on a photographic identification by an eyewitness. Rather, the case was apparently "broken" when Smith's fingerprints were found in the supermarket (Tr. 390–91), and Smith, upon his arrest, implicated Twitty in his confession. Certainly there was no use at the trial of any previous identification.[12]

Thus we find that there were no grounds requiring Kartzman to move for a *Wade* hearing. Hence his failure to make such a motion did not violate Twitty's constitutional rights.

■ Twitty's claim that he was denied effective representation because of Kartzman's withdrawal of the motion for a mistrial in deference to his vacation plans is more troublesome. Certainly an attorney's placing his own interests ahead of those of his client, to the client's prejudice, cannot

be tolerated. Our review of New York law, however, leads us to conclude that Twitty did not have a right to a declaration of mistrial, and he has not established that the withdrawal of the motion prejudiced him.

■ The mistrial motion was based on the contention that Smith's testimony was not proper rebuttal under New York CPL § 260.30.[13] *See People v. Richardson*, 25 App.Div.2d 221, 268 N.Y.S.2d 419, 423 (1st Dept. 1966) (cited by the trial judge in the colloquy with Twitty's counsel, *supra* note 6), in which the prosecutor "saved" two witnesses to rebut an expected alibi defense and was allowed to reopen his case when the alibi defense did not materialize; the Appellate Division criticized this practice in dictum; *People v. Fluker*, 51 App.Div.2d 1045, 381 N.Y.S.2d 330, 331 (2d Dept. 1976) ("Evidence which places a defendant at the scene of the crime is and must be offered as part of the People's direct case and cannot be presented in rebuttal of an alibi defense") (quoting *People v. Baylis*, 75 Misc.2d 397, 399, 347 N.Y.S.2d 892, 894 (Nassau County Ct.1973)); *People v. Coles*, 47 App. Div.2d 905, 366 N.Y.S.2d 216 (2d Dept. 1975) (alternative holding).

Nevertheless, CPL § 260.30(7) gives the trial judge leeway to vary the order of trial:

In the interest of justice, the court may permit either party to offer evidence upon rebuttal which is not technically of

---

**11.** CPL § 710.30(1) (McKinney 1971) provided in part as follows:

Whenever the people intend to offer at a trial . . . (b) testimony identifying a defendant as a person who committed the offense charged, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

CPL § 710.20 (McKinney 1971) provided in part as follows:

Upon motion of a defendant who . . . (b) claims that improper identification testimony may be offered against him in a criminal action, a court may, under circumstances prescribed in this article, order that such evidence be suppressed or excluded upon the ground that it:

\* \* \* \* \* \*

5. Consists of potential testimony identifying the defendant as a person who commit-

ted the offense charged, which potential testimony would not be admissible upon the prospective trial of such charge owing to an improperly made previous identification of the defendant by the prospective witness.

**12.** The circumstances in *Saltys v. Adams, supra,* in which counsel's failure to seek a *Wade* hearing was held to deny effective assistance of counsel, were quite different. There, the eyewitnesses had been shown several photographic arrays, the last of which was followed by their viewing the defendant in a detention area of the police station. The pretrial identifications themselves were admitted into evidence, and the challenged identifications were the only evidence connecting the defendant with the crime.

**13.** *See* note 5 *supra.*

a rebuttal nature but more properly a part of the offering party's original case. During the colloquy the trial court made it clear that it felt the circumstances would justify permitting Smith to testify on rebuttal, and by the end of the colloquy it was by no means clear that the mistrial motion would have been granted. It cannot necessarily be inferred from cases such as *Fluker, supra* and *Richardson, supra* that allowing Smith to testify on rebuttal in Twitty's trial was an abuse of discretion, for the rebuttal witnesses in the cited cases were apparently law enforcement officers or neutral citizens whose testimony the prosecutor could freely have used in his case in chief. Here, however, the prosecutor was unable to obtain Smith's testimony on rebuttal without compromising Smith's plea of guilty to felony murder, and presumably would have had to make a similar compromise in order to obtain Smith's testimony for inclusion in the State's direct case. Especially in light of the prosecutor's surprise at the presentation of Twitty's alibi defense,[14] *see People v. Ayers*, 55 App.Div.2d 783, 389 N.Y.S.2d 481 (3d Dept. 1976) (approving such a reopening of the People's case when the prosecutor is faced with unforeseen developments in his own case); *People v. Reaves*, 30 App.Div.2d 828, 292 N.Y.S.2d 296 (2d Dept. 1968), *aff'd mem.*, 26 N.Y.2d 921, 258 N.E.2d 401, 310 N.Y.S.2d 104 (1970); *see also People v. Tralli*, 88 Misc.2d 117, 387 N.Y.S.2d 37 (App.T.1976), it does not appear that the trial court's

allowing Smith to testify should be considered an abuse of discretion. In any event, the Appellate Division did not find it an abuse; the claim that a mistrial should have been granted was clearly argued to that court, which affirmed Twitty's conviction without opinion.[15]

Moreover, even assuming that the motion should have been granted, it is not clear that Twitty was prejudiced by not gaining a new trial, since the complaint related merely to the order of proof rather than its admissibility.

Finally, it is not certain that Kartzman withdrew the motion because of his vacation plans. At one point in the colloquy he indicated that he would suffer contempt rather than proceed within the framework ordered by the court. And before the mistrial motion was eventually withdrawn, Kartzman conferred with Twitty. There is no indication in the record that Twitty objected or that he did not understand the nature of the question. With the benefit of hindsight, it might be argued that a different tactical decision would have been better for Twitty, but that is far from a showing of constitutionally defective representation.

Since we conclude that the only asserted grounds as to which Twitty exhausted his state remedies do not meet our standards for showing ineffective assistance of counsel, the judgment of the district court is affirmed.[16]

---

14. It may be argued that it was the prosecutor's own fault that he was surprised by the alibi defense since he did not serve demand of notice of such a defense pursuant to CPL § 250.20 then in effect (since declared unconstitutional in certain respects in *People v. Bush*, 33 N.Y.2d 921, 352 N.Y.S.2d 936, 308 N.E.2d 451 (1973), *modified*, 34 N.Y.2d 537, 354 N.Y.S.2d 102, 309 N.E.2d 872 (1974), *cert. denied*, 419 U.S. 848, 95 S.Ct. 85, 42 L.Ed.2d 77 (1974)). However, it seems unlikely that Kartzman would have notified the State of such a defense in light of his own professed surprise at trial (Tr. 264–65). Kartzman's own ignorance of the alibi defense, of course, itself raises questions of effectiveness of counsel, but as we stated earlier, Twitty has not exhausted his state remedies on this ground.

15. Point VI of Twitty's Appellate Division brief begins: "The action of the District Attorney in calling as a rebuttal witness an admitted accomplice who had pleaded guilty to the indictment, instead of calling him as a part of his direct case, was a violation of the law . . .."

16. To the extent that our denial of relief is based on petitioner's failure to exhaust his state remedies, the dismissal of the petition is without prejudice to his filing a new petition after state remedies are exhausted. *Mayer v. Moeykens*, 494 F.2d 855, 859 n.3 (2d Cir.), *cert. denied*, 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974). Moreover, in a case where it may be contended that a confluence of facts and events show ineffective assistance of counsel, the rejection of facts, taken singly, as inade-

quate to support the claim will not prevent those facts from being considered as a part of the totality of circumstances alleged to support the claim.