Jesse JOHNSON and Cynthia Hall, Petitioners-Appellees,

v.

Paul METZ, Warden, Great Meadows Correctional Facility and Janice Warne, Correction Superintendent, Bedford Hills Correctional Facility, Respondents-Appellants.

No. 1161, Docket 79–2028.

United States Court of Appeals, Second Circuit.

Argued June 14, 1979.

Decided Dec. 4, 1979.

Barry R. Fertel, Deputy Asst. Atty. Gen. of N. Y., New York City (Robert Abrams, Atty. Gen., and George D. Zuckerman, Asst. Atty. Gen. of N. Y., New York City, of counsel), for respondents-appellants.

Jeffrey A. Rabin, Brooklyn N. Y. (Albert C. Aronne, Brooklyn, N. Y., of counsel), for petitioners-appellees.

Before GURFEIN, VAN GRAAFEI-LAND and NEWMAN,* Circuit Judges.

GURFEIN, Circuit Judge:

The State of New York appeals from the conditional grant of a writ of habeas corpus by the District Court for the Eastern District of New York (Hon. Edward R. Neaher, *Judge*) ordering the release of the two appellees Johnson and Hall if they were not tried within sixty days.[1] Appellees were convicted jointly of criminal sale of a Dangerous Drug in the First Degree after a jury trial in Supreme Court, Kings County.[2] The convictions were unanimously affirmed by the Appellate Division, without opinion, on October 15, 1974, 46 A.D.2d 739, 361 N.Y.S.2d 325 (2d Dep't 1974), and leave to appeal to the New York Court of Appeals was denied on February 4, 1975. Certiorari was denied. 422 U.S. 1048, 98 S.Ct. 2666, 45 L.Ed.2d 700. The District Court wrote a lengthy opinion in which it concluded that the excessive intervention of the trial judge into the proceedings amounted to an unconstitutional deprivation of the right to a fair trial and hence violated the due process clause of the Fourteenth Amendment.

The habeas corpus proceeding was begun on March 17, 1976. After a hearing the District Court granted the writ with a full opinion on February 5, 1979.

The State filed a notice of appeal and then filed a motion for reconsideration of the decision in the District Court. In that motion the State renewed its earlier contention that the prisoners had failed to exhaust their state remedies, as required by 28 U.S.C. § 2254(b) and (c), and that the court should therefore have refused to take jurisdiction. The District Court held that the filing of this appeal ousted it of jurisdiction to consider the exhaustion contention, but for prudential reasons stated its view, nonetheless, that there had been sufficient exhaustion of the state remedies.

Though the case is close, we have come to the conclusion that on the basis of precedent there has been no exhaustion of state remedy in the sense that the state court has never had a reasonable opportunity to con-

---

* Judge Newman was United States District Judge for the District of Connecticut, sitting by designation, at the time of oral argument.

1. Judge Neaher later stayed his order.

2. Defendant Johnson was sentenced to a term of 25 years to life for each crime to run concurrently and Hall was sentenced to two concurrent terms of 15 years to life. Johnson is in prison. Hall was allowed bail by Judge Neaher pending appeal.

Johnson offered no evidence at trial but based his defense on entrapment and his claim that he was agent for the buyer. As Judge Neaher recognized, these defenses were virtual admissions of Johnson's involvement in a heroin transaction. Hall's sole defense was her own testimony that she did not know the contents of the green knapsack which contained the heroin.

sider the conduct of the trial judge as deficient on *federal constitutional* grounds. Section 2254 of Title 28, U.S.Code, provides that a writ should not be granted to a person in custody pursuant to the judgment of a state court unless it appears that the applicant has exhausted the remedies available in the courts of that state or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. The essence of the exhaustion rule was stated by the Supreme Court in *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), as follows:

> The [exhaustion] rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the *same claim* he urges upon the federal courts.

(Emphasis added.)

The argument is made in this case that because the claim that the judge had denied a fair trial was actually raised in the state court, this is sufficient to satisfy the requirement that remedies shall have been exhausted.

We have examined the briefs in the Appellate Division and have come to the conclusion that the federal constitutional claim now asserted was not raised in that court. The argument was made there that the defendants were deprived of a fair and impartial trial by the prejudicial conduct and constant interference of the trial court. The primary line of cases cited in support were state cases in which prejudicial conduct by trial judges resulted in reversal by the appellate courts of the state as a matter of state law or under their supervisory power. While it is true that some federal cases were also cited, these were all cases dealing with the supervisory power of the appropri-

ate federal court, cited without reference to constitutional provisions. The thrust of the argument can be seen in defendant Johnson's conclusion at the end of his brief in the Appellate Division, in which he urged that "a fair trial is one of the most basic and fundamental essentials of judicial process and *no matter how strong the evidence pointing to guilt may be,* a judgment of conviction must be reversed if the trial was not fair" (italics in original). (App. 213.) Significantly, six cases were cited in support of this conclusionary statement, all of them state cases, as follows: *People v. Mleczko,* 298 N.Y. 153, 81 N.E.2d 65 (1948); *People v. Dovico,* 6 App. Div.2d 457, 179 N.Y.S.2d 379 (1958); *People v. Herman,* 255 App.Div. 314, 7 N.Y.S.2d 560 (1938); *People v. DeMartino,* 252 App.Div. 476, 299 N.Y.S. 781 (1937); *People v. Man,* 5 Misc.2d 852, 165 N.Y.S.2d 783 (1956); and *People v. Schildhaus,* 17 Misc.2d 825, 186 N.Y.S.2d 68 (1959).

Defendants couched their argument concerning fair trial in constitutional terms for the first time on their petition for certiorari in the United States Supreme Court.

The question of fair trial in relation to the overall conduct of the trial judge has in the past been stated in terms of either state law or the supervisory power of the particular court. In the absence of a claim of a federal *constitutional* violation, we must consider whether the New York appellate courts had a fair opportunity to consider the conduct of the trial judge in this case as violating fundamental rights guaranteed by the *federal Constitution.*

In this circuit we have tried to apply *Picard v. Connor, supra,* in terms of a recognition of the importance of according to the state courts co-equal jurisdiction and competence to decide constitutional questions. Accordingly, we have tended to construe rather narrowly the issue posed in *Picard v. Connor* whether the state court had been given the opportunity to decide the same "ultimate question for disposition." Since 1971 we have had occasion to consider the difficult question of where to draw the line. Shortly after *Picard v. Con-*

nor, we held in *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121, 1124 (2d Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972), that although "a general due process argument was made in the state court" under *Picard v. Connor*, the broad due process argument made under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in the federal court had not been brought to the attention of the state court. Accordingly, we said:

> His attack is upon the conduct of the District Attorney and of the State Supreme Court Justice who participated in that trial. It would indeed be violative of § 2254(b) as construed in *Picard v. Connor* to deny the state court the opportunity to review the propriety of the actions of its court and prosecutor, under attack here, *in a constitutional posture never fairly or substantially presented to it.*

(Emphasis added).

Earlier in that term we decided in *United States ex rel. Rogers v. LaVallee*, 463 F.2d 185, 187 (2d Cir. 1972), that although a claim of double jeopardy under *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), was actually raised in the state courts, the state courts were never fully advised of the specific jury instruction that was claimed to be determinative of the double jeopardy claim. We rejected the contention that we should consider the writ "because appellant did raise a double jeopardy issue in the state courts."

Similarly, in *Wilson v. Fogg*, 571 F.2d 91 (2d Cir. 1978), we refused to decide a constitutional claim that the defendant had been prejudicially tried *in absentia*, on the ground that the appeal in the state court had focused on state grounds and that "there is no mention of any invasion of Wilson's constitutional rights in the entire text of Point I." *Id.*, at 93. We noted there that even though the cases cited in Wilson's brief in the Appellate Division also addressed the issue in constitutional terms, the brief, nevertheless, did not give the state court a fair opportunity to pass on the constitutional question.

Another case in which the underlying complaint appeared, on the surface, to be the same in the state appeal was *Cameron v. Fastoff*, 543 F.2d 971 (2d Cir. 1976). There, as here, the habeas petition presented to the District Court the same federal constitutional claims which petitioners had raised for the first time in their certiorari petition in the United States Supreme Court. There the contention was that a detective's claim of Fifth Amendment privilege with respect to an affidavit in support of a warrant prejudiced the defendants contrary to their Fourth, Fifth and Sixth Amendment rights. We held that the claim on the state appeal had been made only under state law and, hence, did not satisfy the exhaustion requirement.

The ground of federalism previously mentioned as a basis for the doctrine of exhaustion of state remedies is particularly cogent in cases such as this where the conduct of the state trial judge is at issue. *See, e. g., Wilson v. Fogg, supra*, at 93; *Fielding v. Le Fevre*, 548 F.2d 1102, 1106 (2d Cir. 1977).

On the basis of precedent, therefore, the construction by this circuit of the meaning of the exhaustion doctrine leads us to conclude that the New York State courts have never been given an opportunity to consider the really serious question of whether the pervasive conduct of the trial judge in this case, which Judge Neaher found, amounted to a violation of federal constitutional due process.[3]

There remains one problem which persists because of the post-conviction relief statute in New York which has been the subject of dicta in several cases—that is, Section 440.-10(2)(c) of the New York Criminal Proce-

---

**3.** The general view of the problem, though not directly in point because it involved failure to object to the introduction of evidence on proper grounds, was stated by this court *en banc* in *Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). We held that though petitioner had claimed in the state court that his palm prints had been taken unconstitutionally under the Fifth and Sixth Amendments, his failure to make a claim in the state court on the basis of the Fourth Amendment, among other reasons, precluded his raising that issue on federal habeas corpus.

dure Law which provides that the state court must deny a motion to vacate a judgment of conviction when, "although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal . . . ." The meaning of "unjustifiable failure" has not yet been determined by the court of appeals nor has that court stated whether it would limit post-conviction relief in a case involving a claim of unfair trial.[4] Nor has there been any definitive determination of whether state habeas corpus survives as a post-conviction remedy. Despite this uncertainty, we have taken the position, though not without a difference of opinion, *see United States ex rel. Leeson v. Damon*, 496 F.2d 718, 720–21 (2d Cir.), *cert. denied*, 419 U.S. 954, 95 S.Ct. 215, 42 L.Ed.2d 172 (1974), that whether New York entertains collateral relief at this point is a matter of New York law to be decided by the New York courts. *Wilson v. Fogg, supra*, 571 F.2d at 95, citing *Cameron v. Fastoff, supra*, 543 F.2d at 977–78 & n.7. It is difficult for this panel to believe, however, that no post-conviction remedy whatever will be available by way of state collateral relief when a serious federal constitutional issue is involved.

We have been cited to no case, nor have we found any, in which the intervention of a trial judge in the conduct of trial has been found so prejudicial as to amount to a viola-tion of constitutional due process. Particularly because of the lack of authority, we think it appropriate that the state court should be allowed, in the first instance, to pass on the constitutional point fairly presented to it. We say this without attempting to suggest the result in this obviously serious case.

We trust that upon a post-conviction hearing careful attention will be given to this record by the state courts in terms of the serious allegation of constitutional deprivation of the right to fair trial.[5]

Accordingly, we reverse the judgment granting the writ on the ground that appellees have not exhausted their state remedies, and direct that the petition be dismissed without prejudice.

NEWMAN, Circuit Judge, concurring:

I concur in Judge Gurfein's opinion for the Court, but deem it appropriate to comment briefly on the nature of the claim on the merits, which is now being returned for further consideration by the New York courts.

The petitioners' claim on the merits is not limited to an assertion that the trial judge rendered their convictions constitutionally unfair by his excessive intervention. Were the claim so limited, it would indeed be a novel basis for alleging that a conviction has been obtained in violation of the Due Process Clause. Intervention *per se* would normally be a matter of concern to a court with supervisory authority. In that capacity, the New York Court of Appeals only recently reversed a conviction where the

---

4. The Supreme Court in *County Court of Ulster v. Allen*, —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), apparently considered that the issue of fair trial might still be raised, citing, e. g., *La Rocco v. Lane*, 37 N.Y.2d 575, 584, 376 N.E.2d 93, 338 N.E.2d 606 (1975), and *People v. De Bour*, 40 N.Y.2d 210, 214–15, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976). Mr. Justice Stevens did not, however, mention § 440.-10(2)(c) cited above, *see* 99 S.Ct. at 2221 n.10, since neither case involved a failure to raise the point *on appeal*.

5. Concerning Judge Newman's concurring opinion, we think more searching analysis of the cases where writs have been granted or decisions reversed on certiorari from state courts based on judicial conduct would be required before we would venture a definitive judgment. Since we are dismissing the petition without prejudice and, in effect, giving the state court the first opportunity to pass on whether or not the novel constitutional point is "within the mainstream of due process adjudication," we emphasize that we do not summarily reject Judge Newman's contention, but prefer to leave its determination in the first instance to our state court brethren.

trial judge intervened to ask more than one-third of all the questions asked during the trial. *People v. Mees*, 47 N.Y.2d 997, 420 N.Y.S.2d 214, 394 N.E.2d 283 (1979). No doubt that Court will not lightly forgo the opportunity to reexamine this record, in which the trial judge asked more questions than either the prosecutor or the defense attorneys.

But the degree of intervention provides only the context in which petitioners' claim arises. The essence of the claim is that the nature of all of the trial judge's conduct— his questions, his comments to defense counsel, his comments to the defendants, and his comments to the jury—combined to deny petitioners the "fair trial in a fair tribunal" that is "a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). This claim goes far beyond what occurred in *Davis v. Craven*, 485 F.2d 1138 (9th Cir. 1973) (*en banc*), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974), where the trial judge had expressed a circumspect opinion as to the petitioner's guilt. The claim here is that the trial judge so far departed from his role as a "symbol of even-handed justice," *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y.1966) (Weinfeld, J.), as to join forces with the prosecution and help secure the convictions.

A claim of this nature is well within the mainstream of due process adjudication. A federal court, exercising habeas jurisdiction, has overturned a state conviction where even isolated comments of a trial judge to a jury created prejudice sufficient to establish a denial of due process. *United States ex rel. Harding v. Marks*, 403 F.Supp. 946 (E.D.Pa.1975). A trial judge's one-sided intrusion into the process of criminal adjudication has also precipitated federal court reversal of a state conviction when the trial judge exerted improper influence over the decision of a defendant's witness to testify, *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), and when a trial judge exerted improper influence over a defendant's decision to plead guilty, *United States ex rel. Elksnis v. Gilligan, supra*.

Indeed, due process violations sufficient to void state criminal convictions have been found when the role of the trial judge created only the risk or the appearance of partiality. *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (fine payable to judge or his administration); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (same); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (trial for contemptuous behavior that had been directed toward the judge); *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (prior role of trial judge as one-man grand jury); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (same). Surely actual conduct by a trial judge conveying to a jury not merely his opinion of a defendant's guilt but his determination to secure a conviction is at least as serious a denial of due process as cases where state court convictions have been vacated because the jury was subjected to the risk of improper influence from other sources. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (excessive publicity); *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) (prosecution witnesses attending the jury); *Moore v. Dempsey*, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923) (threat of mob violence).

Petitioners' claim, now returned for what will surely be sensitive examination by the state courts, is that the trial judge failed to observe the enduring admonition of Judge Learned Hand: "[The trial judge] must not take on the role of a partisan; he must not enter the lists; he must not by his ardor induce the jury to join in a hue and cry against the accused. Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge." *United States v. Marzano*, 149 F.2d 923, 926 (2d Cir. 1945).