Eddie SABINO, Plaintiff,

v.

Eugene LeFEVRE, Superintendent, Clinton Correctional Facility, and the Attorney General of the State of New York, Louis Lefkowitz, Defendants.

No. 78 Civ. 1775 (ADS).

United States District Court,
S. D. New York.

April 30, 1980.

Frederick H. Block, New York City, for plaintiff.

Robert Abrams, Atty. Gen., State of New York, New York City, by Stephen M. Jacoby, Asst. Atty. Gen., New York City, for defendants.

## OPINION

SOFAER, District Judge:

Petitioner was convicted of criminal sale of controlled substances in the second degree on June 11, 1975, following a jury trial in the Supreme Court of New York, Bronx County. The Appellate Division of the First Judicial Department unanimously affirmed the conviction by order dated June 15, 1976, and leave to appeal to the New York Court of Appeals was denied on July 23, 1976. Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The petition, filed pro se, challenges the conviction on three grounds. Petitioner claims, first, that he was denied effective assistance of counsel at trial. Second, petitioner contends that he was denied due process by the trial court's refusal to permit disclosure of the identity of a confidential informant. Finally, petitioner argues that the trial judge's admonishment concerning petitioner's rights on cross-examination violated due process.

Following the submission of respondent's papers in opposition to the petition, Judge Pierce, to whom this case was originally assigned, appointed counsel to represent petitioner pursuant to 18 U.S.C. § 3006A(g). Assigned counsel, after reviewing the petition, transcript and papers in this case, and after consulting with petitioner, conceded in his affidavit in support of the petition that the first two claims lacked merit, and elected not to pursue them further. At oral argument and in his supplemental memorandum, counsel again stated that the claims were meritless and that he would not press them in this proceeding. From his affidavit and from his oral representations, it is clear that counsel's decision to drop the first two claims was based on careful review and thorough consideration. Moreover, petitioner, though aware of the decision, has apparently acquiesced in counsel's judgment. Counsel's decision not to pursue these claims appears justified. *See, e. g., United States v. Roberts,* 401 F.2d 538, 539 (2d Cir.), *cert. denied,* 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968) (absent defense demand government is under no obligation to volunteer information concerning informant); *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950) (allegations of incompetence of counsel are insufficient unless counsel's representation made trial a farce and a mockery of justice). In any event, under these circumstances, petitioner is bound by counsel's waiver of the claims. As the Second Circuit has stated: "A defendant who elects to be represented by counsel surrenders the right to make the ultimate decision on a wide variety of matters. . . . The courts have increasingly come to recognize that a lawyer's decisions, at least on those subjects for which he bears ultimate responsibility, will ordinarily be binding, even though important constitutional rights may be lost. . . ." *Ennis v. LeFevre,* 560 F.2d 1072, 1075 (2d Cir.

1977), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978) (citations omitted).

That brings us to the third claim. At the trial, the prosecution called three policemen and a chemist. Police Officer Santiago testified that on December 11, 1973 at about 3:15 P.M., while acting in an undercover capacity, he was introduced to petitioner in a car owned by an informant. (Tr. 16–17) The two other police witnesses observed the meeting. (Tr. 71–72; 97–100) All three officers identified petitioner in court. Santiago testified that following the introduction he, the petitioner, the informant and two others took a ride in the informant's car, during which narcotics were discussed. (Tr. 17) The following evening, at about 11:15 P.M., Santiago and the informant went to petitioner's apartment where Santiago purchased high quality cocaine from petitioner and a "John Doe" for $800. (Tr. 20–26) Santiago met with petitioner in the apartment again on February 27, 1974 and they spoke by phone the following day. (Tr. 27)

Petitioner's wife was the only defense witness. She testified that, on the evening of December 11, 1973, she and her husband celebrated their son's birthday until 12:30 A.M. and retired for the night at 2:00 A.M. (Tr. 158–59; 168–69) She stated that on the evening of December 12, 1973, petitioner went to bed at 8:30 P.M. and that no one came to the apartment that evening. (Tr. 170–72).

Following the testimony of petitioner's wife, the court asked defense counsel in the jury's presence if he had any more witnesses. Defense counsel replied (Tr. 194):

It is getting close to lunch and I would like to call the defendant, Mr. Sabino. I ask the Court to give me an opportunity to review.

After a recess, and in the absence of the jury, the following occurred (Tr. 195–98):

THE COURT: I want to be aware of the fact that prior to the beginning of trial there was [sic] no motions or hearing held with respect to any Sanderval [sic] Hearing, or a hearing of a like kind. But, it is

now too late. There have been no papers filed. There have [sic] been no affidavit filed. There's been no motion to preclude. Under the circumstances, I feel [it] incumbent to let the record show that if your man is called to the stand to testify, he's going to subject himself to the cross-examination and that, in the course of that cross-examination, he will be examined with respect to any or all of the acts in his life which are a matter of public record which indicate a criminal disposition, that including among these acts, are matters which are presently pending in the Court and I will advise him at the appropriate time, before the Jury of the fifth amendment rights that I am now asserting to him that he will have the right and the opportunity to take those fifth amendment rights in the presence of the jury. I say all of these things to you for the benefit of the record and for your consideration yourself and your client before the actual taking of testimony.

MR. KILEY: May I respectfully ask the Court to note that I take an exception to your rulings, sir.

THE COURT: Mr. Kiley, if you want to except to my ruling, you will do so as we go along. I'm merely telling you what it is that your client is faced with and I just want you to be fully apprised of it and be aware of it and I want your client to be aware of it. All right. We'll bring down the jury.

MR. KILEY: If your Honor please, may I have a few moments to go over these alleged charges with my client?

THE COURT: Yes, certainly, I'll give you another five minutes.

(Whereupon, there was a discussion, at the table, off the record, between the defendant and the counsel.)

MR. KILEY: Your Honor, after conferences with the defendant and the family, they have decided that he will not take the stand in his own defense.

■ Based on this colloquy, petitioner in his pro se habeas corpus application set forth a vague due process claim, copied in

part from the heading of Point IV of his brief to the Appellate Division.[1] In his papers and at oral argument, assigned counsel interpreted this claim as one grounded in a constitutional right to testify. He argues that the trial judge erred in suggesting that the prosecutor could prove defendant's criminal disposition, thereby unconstitutionally deterring the defendant from taking the stand, in violation of due process.

■ The initial inquiry with respect to this claim is whether petitioner has exhausted his available state remedies. 28 U.S.C. § 2254(b) and (c). The exhaustion doctrine, grounded in notions of federal-state comity, requires that a state prisoner's constitutional claim be "fairly presented" to the state courts before a federal habeas petition is filed. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). A claim has been "fairly presented" if "the facts on which the defendant relies have been called to the attention of the state court," and if the state court has been informed "of the legal basis for the claim." *Twitty v. Smith*, 614 F.2d 325, 331 (2d Cir. 1979). Since the Supreme Court decision in *Picard v. Connor, supra,* it has become increasingly clear that the Second Circuit will "construe rather narrowly the issue . . whether the state court had been given the opportunity to decide the same 'ultimate question for disposition.'" *Johnson v. Metz*, 609 F.2d 1052, 1054 (2d Cir. 1979).

■ Thus, where a federal constitutional claim is raised in the state proceedings, the district court must closely scrutinize the record to make sure that the very same claim was "fairly presented" to the state courts. *See, e. g., Mayer v. Moeykens*, 494 F.2d 855, 858–59 (2d Cir.), *cert. denied*, 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974) (claim that police lacked probable cause for arrest different from claim that arrest warrant was insufficient); *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991 (2d Cir. 1974) (general assertion that search and seizure "was in violation of my constitutional rights" did not fairly present claim that search and seizure was fruit of an illegal interrogation); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121 (2d Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972) (general due process argument concerning failure of trial judge to grant severance did not exhaust related *Brady* argument).

■ Furthermore, in applying its principle of narrow construction, the Second Circuit has required that, even where the legal substance of a federal claim has been presented to the state courts, the argument in state court be labelled "federal" and be supported by federal constitutional authority. Recent cases have demonstrated how strictly the court will adhere to this practice. In *Johnson v. Metz, supra,* petitioner claimed that the trial judge's excessive intervention in the proceedings amounted to an unconstitutional deprivation of a fair trial in violation of the due process clause of the Fourteenth Amendment of the federal constitution. Although petitioner had argued in state court that he had been "deprived of a fair and impartial trial by the prejudicial conduct and constant interference of the trial court," the Second Circuit held "that the federal constitutional claim now asserted was not raised in that court," since "[t]he primary line of cases cited in support were state cases in which prejudicial conduct by trial judges resulted in reversal by the appellate courts of the state as a matter of state law or under their supervisory power." Moreover, "while . . some federal cases were also cited these were all cases dealing with the supervisory

---

1. The claim in the petition reads as follows:
DENIAL OF DUE PROCESS UNDER THE 6TH AND 14TH AMENDMENT [sic] OF THE UNITED STATES CONSTITUTION. . . .
The Trial Judge committed error when he admonished defendant after defendant had indicated before the Jury that he would testify on his own behalf that he would allow cross-examination of his acts based upon pending unrelated indictments and that he, the trail [sic] Judge would advise the defendant of his Fifth Amendment rights before the Jury.
The hearing in the state brief did not include the due process part of this claim.

power of the appropriate federal court." 609 F.2d at 1054. Similarly, in *Gayle v. LeFevre*, 613 F.2d 21 (2d Cir. 1980), though petitioner "presented to the state appellate courts, *inter alia*, his claim that the [biased] conduct of the trial judge deprived him of a fair trial," the court held that he had not exhausted his state remedies since "federal constitutional claims, *as such*, were not raised in [the Appellate Division]." 613 F.2d at 22 (emphasis added). These cases are consistent with prior holdings of the Circuit. *E. g., Hoover v. State of New York*, 607 F.2d 1040 (2d Cir. 1979) (petitioner claimed in state *coram nobis* proceeding that he was not informed of all the elements of his crime at time of guilty plea but did not cite federal constitutional case); *Wilson v. Fogg*, 571 F.2d 91 (2d Cir. 1978) (failure of petitioner explicitly to raise constitutional issue in state court not cured by fact that state cases cited in his brief discussed issue in constitutional terms); *United States ex rel. Gibbs v. Zelker, supra* (state brief mentioning lack of counsel and lack of warnings in state law context held not to raise federal constitutional issue in light of failure to cite *Miranda* and constitutional provisions). *But see Twitty v. Smith, supra* (words "effective assistance of counsel" so closely associated with Sixth Amendment as fairly to present substance of constitutional claim to state court).

These recent Second Circuit decisions seem so demanding in the burden they impose on petitioners that the question arises whether that Court's assumptions concerning the capability of the defense bar and of New York's judges are realistic. State court defense attorneys, usually assigned, are assumed knowledgeable of federal habeas corpus exhaustion requirements, and capable of satisfying them. On the other hand, state court judges are assumed to need painstaking guidance as to federal rights, as though they are unaware that a "fair trial" claim may potentially raise federal as well as state-law issues. *See Gayle v. LeFevre, supra* (Oakes, J. dissenting). In other contexts, federal judges are obliged to indulge the more flattering—and more accurate—assumption that state judges have

the capacity as well as the duty to uphold the federal constitution. *See, e. g., Stone v. Powell*, 428 U.S. 465, 493–94 n. 35, 96 S.Ct. 3037, 3052 n. 35, 49 L.Ed.2d 1067 (1976). Until these anomalies are dealt with, however, habeas applicants whose state court attorneys have exercised the lack of care shown by petitioner's must clearly be forced to return to the state courts.

Counsel argues that petitioner's claim that he was deprived of a constitutional right to testify was presented to the New York courts in Point IV of petitioner's brief in the Appellate Division. Petitioner did claim in that brief that the trial judge's admonition "in effect precluded" him from taking the stand. But he did so only in pressing other arguments, not in the context of asserting a constitutional right to testify. *See Fielding v. LeFevre*, 548 F.2d 1102, 1107 (2d Cir. 1977). Petitioner also made an oblique reference to the "chilling effect" of the judge's admonition. But this reference was in the context of a claim that the jury might have drawn impermissible inferences from the petitioner's *failure* to testify after having stated his intention to do so. That the emphasis of petitioner's argument was on the right *not* to testify is buttressed by the brief's reference to *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the only federal authority cited in that section.

One must strain to find any cognizable argument, let alone a constitutional one, from a second reference in petitioner's state court brief to the deterrent effect of the judge's admonition. Read liberally, the brief seems to introduce an argument that counsel failed adequately to protect his client by failing to ask the trial judge for a more definitive ruling on the *Sandoval* issue. At no point did the brief specifically refer to a constitutional right to testify or to any authority which could have directed the state court's attention to that federal issue. Nor did the State's brief allude to such a right. Indeed, the words "right to testify", let alone "constitutional right to testify," are nowhere found in either brief. *Compare Twitty v. Smith, supra.* Interest-

ingly, the difficulty petitioner has had in this court in delineating the contours of the right he asserts was violated underscores the fact that New York's courts cannot be assumed to have gleaned his present contentions from the text of his Appellate Division brief.[2]

Controlling precedent in the Second Circuit and the fact that "[the federalism] basis for the doctrine of exhaustion of state remedies is particularly cogent in cases such as this where the conduct of the state judge is at issue," *Johnson v. Metz, supra,* 609 F.2d at 1055, compel the conclusion that petitioner has not exhausted his available state remedies. Petitioner must therefore pursue his post-conviction remedies before seeking habeas relief in this court. N.Y. Crim.Proc.L. § 440.10.[3]

Accordingly, the application for a writ of habeas corpus is denied. F.R.C.P. 56.

So ordered.

---

2. The substance of his argument in this court is that the trial judge erred in ruling that cross-examination on acts underlying pending indictments was admissible to prove petitioner's criminal disposition, and that "petitioner was *deterred from taking the stand because of the erroneous admonition,*" in violation of due process. Petitioner's Supp.Mem. 11. Petitioner does not contend that the alleged evidentiary error in this case itself violated the Constitution. *Compare New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979); *United States v. Hickey,* 596 F.2d 1082 (1st Cir.), *cert. denied,* 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 70 (1979). *Cf. United States ex rel. Wilcox v. Johnson,* 555 F.2d 115 (3d Cir. 1977). He cites only state authority for the proposition that there was any error at all. And, while the Constitution prevents a state from unduly burdening a defendant's right to testify, *see Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), it can hardly be said that every error on a state law evidentiary issue which contributes to a tactical decision not to testify raises a question of constitutional dimension. In any event, the affirmance of the verdict in the state courts, in light of the argu-

ment in the Appellate Division that the admonition was error, suggests that there was no error as a matter of state law.

3. The New York courts may refuse to entertain petitioner's *coram nobis* petition at this late date on the ground that there was an "unjustifiable failure to raise such ground" on appeal. N.Y.Crim.Proc.L. § 440.10(2)(c). *See United States ex rel. Leeson v. Damon,* 496 F.2d 718, 720–21 (2d Cir.), *cert. denied,* 419 U.S. 954, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974); *Frazier v. Czarnetsky,* 439 F.Supp. 735, 737 (S.D.N.Y. 1977). But " '[e]ven if there were some doubt as to the availability of relief in the New York courts, we still would give its courts the first chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available'. . . . Whether New York entertains collateral relief at this point is a matter of New York law to be decided by New York courts and not by federal court predictions of what stances those courts will take." *Wilson v. Fogg, supra,* 571 F.2d at 95 (citations omitted). *See Johnson v. Metz, supra,* 609 F.2d at 1055–56.