**Joseph CONTE, Petitioner,**

**v.**

**Robert HENDERSON, Superintendent, Auburn Correctional Facility, Respondent.**

**No. 81–CV–547.**

United States District Court, N. D. New York.

March 16, 1982.

James R. McGraw, Syracuse, N. Y., for petitioner.

Robert Abrams, Atty. Gen. of the State of N. Y., Albany, N. Y., for respondent; Daniel L. Saxe, Asst. Atty. Gen., Albany, N. Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

The petition in this federal habeas corpus proceeding was prepared by Attorney McGraw and filed with the payment of the $5.00 filing fee. The petitioner is an inmate of Auburn Correctional Facility. He was convicted by a jury in Onondaga County Court, Syracuse, New York, of Arson in the Third Degree and sentenced to 0–7 years. The date of the judgment of conviction is July 17, 1979. The conviction was affirmed by the Appellate Division, no opinion, 75 A.D.2d 1026, · 429 N.Y.S.2d 337 (1980).

Leave to appeal to the New York Court of Appeals was denied without comment. 50 N.Y.2d 844, 430 N.Y.S.2d 1028, 407 N.E.2d 1356 (1980).

An answer to the petition has been filed for the Respondent Superintendent by the Attorney General as directed by the Court together with a memorandum of law concluding that the petition should be denied and dismissed. The Attorney General has furnished copies of the briefs for each side filed in the Appellate Division, Fourth Department, and the full record on appeal that contains the complete minutes of the trial. As occurs in many of these habeas corpus proceedings, these records constitute a substantial submission that is necessary for district court review under federal appellate court rulings. The records must be returned to the Onondaga County District Attorney with the appreciation of the court for such cooperation.

The instant petition presents substantial and close procedural and substantive questions. The petition offers three grounds for federal habeas relief: (1) The conduct and argument in summation of the trial prosecutor constituted a denial of due process to the petitioner; (2) the court erred in instructing the jury that "A person is presumed to intend the ordinary and necessary consequences of his act," and such instruction denied the petitioner due process of law; (3) the cumulative effect of grounds (1) and (2) denied the petitioner a fair trial. These three grounds track the similar points raised in the appellate brief filed for the petitioner in the Appellate Division, Fourth Department.

The position of the Attorney General for the Respondent Superintendent contained in the answer and memorandum of law is that although exhaustion of state remedies in regard to ground (2) is questionable, there is a failure of the required exhaustion in regard to grounds (1) and (3). This threshold question of exhaustion, in my judgment, has become increasingly difficult for the district courts to determine in the Second Circuit with any degree of certainty in view of the many Panel opinions with

close distinctions and refinements of the state court procedures necessary to meet the federal statutory exhaustion requirements and to qualify the petition for federal court acceptance. In his dissenting opinion in *Klein v. Harris*, 667 F.2d 274, 292 (2d Cir. 1981), Circuit Judge Timbers lists and reviews many of this great number of Second Circuit appellate writings on this exhaustion problem. In *Klein v. Harris, supra*, at 282–284, the majority ruled that in this Circuit there must be a two-prong inquiry for determining whether the requisite exhaustion has occurred. There is also discussion in *Klein*, at 284–287, on the question as to whether there was a procedural default relied upon by the state courts that would bar the claim from federal habeas corpus presentation under the rulings of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). More light and certainty may be forthcoming by the grant of in banc reconsideration and hearing by the Second Circuit in *Daye v. Attorney General*, 663 F.2d 1155 (2d Cir. 1981). *See Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *see also Johnson v. Metz*, 609 F.2d 1052 (2d Cir. 1979); *Twitty v. Smith*, 614 F.2d 325 (2d Cir. 1979); *Wilson v. Fogg*, 571 F.2d 91 (2d Cir. 1978).

The basic and noted landmark case on the exhaustion requirement is *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), simply requiring a state prisoner under 28 U.S.C. § 2254(b) to present the state courts with the same claim he urges upon the federal courts. In recent days, the United States Supreme Court formulated a new approach to the processing of these increasing state prisoner habeas petitions ruling that "mixed petitions", i.e., ones containing unexhausted and exhausted claims must be dismissed, leaving the state prisoner with the choice of returning to the state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court. *Rose v. Lundy*, 455 U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d —— (1982). Justice Blackmun, concurring, at p. ——, 102 S.Ct. at p. 1205, fears that

this new approach may delay the resolution of claims that are not frivolous and increase rather than alleviate the caseload burdens of both state and federal courts. As in this instance, Justice Blackmun also points out, at p. ——, 102 S.Ct. at p. 1207, substantial work has to be done by the district judge to find out what claims are exhausted, what ones are unexhausted, and what ones may be barred by procedural default relied upon by the State courts. These determinations can only be made by a review of the state appellate briefs, or in some cases from portions of the trial record. These state records have to be obtained and furnished to the federal court by the State Attorney General—and often are voluminous. It is rare that a pro se state prisoner petitioner, even when represented by a lawyer, as here, submits with the petition the state appellate briefs or state record of the trial. This practice necessitates the filing of the petition, unless clearly frivolous on its face, and the preparation and issuance by the Court of a memorandum-decision and order directing the petition to be served on the Respondent and the Attorney General for answer and the furnishing of necessary state transcripts and records pursuant to Rules 4 and 5 of the Rules Governing Section 2254 Cases in the United States District Courts. 28 U.S.C. fol. § 2254. The District Court after compliance with its order then has the burden to determine from these records whether the exhaustion requirements of 28 U.S.C. § 2254(b) and (c) and controlling federal case law interpreting the provisions of the statute have been satisfactorily met.

The threshold issue of exhaustion, which has become a complex one, from my review of the appellate briefs and trial records in this proceeding, is answered by Second Circuit case law, at least settled and controlling to this point in time. It is my judgment that there has been satisfactory exhaustion on both grounds 1 and 2, and the federal merits of each can be determined. Ground 3 is merely a cumulative one fully dependent upon the first two. *Twitty v. Smith, supra*, 614 F.2d at 331–32 (2d Cir.

1979), has been construed to state that there is enough federal labeling of the claim in the state courts if the conduct complained of was alleged to be in violation of defendant's right to due process. *See Krische v. Smith*, 664 F.2d 177 (2d Cir. 1981).

In regard to ground 1 here, that the comments in the summation of the prosecutor constituted a denial of due process, there was immediate objection made by defense counsel during the prosecutor's summation stating there was implication concerning the failure of the petitioner to take the stand (R. 633). Further, contrary to the position of the Attorney General, I find in the appellate brief of the petitioner that in addition to the citation of State cases, there is the statement that petitioner's right against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution was violated and due process demands a new trial. (Brief for Appellant, App.Div., Fourth Dept., pp. 22–23). *See Johnson v. Metz, supra*, at 1054. In my judgment, the contemporaneous objection at the trial and the reference to the Federal constitution on direct appeal are sufficient to meet the exhaustion of available state remedy requirements for entertainment and examination of this first ground in the petition.

The standard as to whether a prosecutor's conduct or argument in summation reaches constitutional proportions in a collateral attack of this kind was set forth in *United States ex rel. Castillo v. Fay*, 350 F.2d 400, 401 (2d Cir. 1965), *cert. denied*, 382 U.S. 1019, 86 S.Ct. 637, 15 L.Ed.2d 533 (1966). It is whether the conduct and argument created a situation so prejudicial that there was denial of due process. From my review of the summation of the prosecutor, there is only the usual response to the defense summation with argument that is reasonably related to the evidence and is not unfair or overdone to such extent as to violate due process. There is persuasive answer to the contentions of the defense in this regard in The People's Brief, App.Div., Fourth Department, pp. 37–41. It is always

a serious challenge that there was implication in the summation of a prosecutor that could be related to the petitioner's failure to take the stand. However, there was curative and full instruction given by the trial judge in his charge in this regard at the express request of defense counsel. R. 655, 660–61. Moreover, the remarks complained about were not direct ones in any sense, but ambiguous in regard to the implication that the defense sought to draw from them. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 649, 94 S.Ct. 1868, 1874, 40 L.Ed.2d 431 (1974); *Ketchum v. Ward*, 422 F.Supp. 934, 944–47 (W.D.N.Y.1976), *aff'd*, 556 F.2d 557 (2d Cir. 1977, no opinion). There is no showing that prosecutor's comments created a situation where fundamental unfairness existed in the trial to such extent that petitioner was denied due process of law. Ground 1 does not support the extraordinary grant of federal habeas corpus relief.

Ground 2 presents a substantial issue due to the ruling of the United States Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Again as a threshold problem, the Attorney General contends that the failure of defense counsel to make timely objection at the trial to the instruction condemned by *Sandstrom*, similar to the one here, is a state procedural default that bars federal habeas relief, absent a showing of cause or prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). It is interesting to note that the State charge in this Conte case was given just ten days before the *Sandstrom* ruling was handed down. The defense counsel, as many others did before the *Sandstrom* ruling, took no exception. However, there is settled Second Circuit case law that counters this contention of the Attorney General that federal habeas corpus is barred. In *Washington v. Harris*, 650 F.2d 447 (2d Cir. 1981), Chief Judge Feinberg reviewed for federal habeas purposes the state procedural history of cases similar to this one, and ruled there was no absolute bar to raising the habeas claims by failure to object at the trial level so long as

the issue was raised in the Appellate Division. *See Callahan v. LeFevre,* 605 F.2d 70 (2d Cir. 1979). In this Conte case, the issue was raised on direct appeal in the appellant's brief in the Appellate Division, and although the People's brief noted there was failure to object to the instruction thereby waiving any challenge to it, the brief continued with a full discussion of the merits. It was specifically stated in the brief that the reliance of the defense upon the *Sandstrom* ruling was misplaced when compared to the Conte total charge. In *Washington, supra,* p. 452, it was reasoned that the affirmance by the Appellate Division, without opinion as here, impelled the inference that the merits were passed upon.

*Sandstrom v. Montana, supra,* as expected, has caused an abundance of court opinions and it might be helpful to others to note several recent ones. *Pigee v. Israel,* 503 F.Supp. 1170 (E.D.Wis.1980), *aff'd,* 670 F.2d 690 (7th Cir. 1982); *Burton v. Bergman,* 649 F.2d 428 (6th Cir. 1981), *pet. cert. filed,* 50 U.S.L.W. 3282 (Aug. 17, 1981); *United States v. Williams,* 665 F.2d 107 (6th Cir. 1981); *People v. Getch,* 50 N.Y.2d 456, 429 N.Y.S.2d 579, 407 N.E.2d 425 (1980); *People v. Green,* 50 N.Y.2d 891, 430 N.Y.S.2d 267, 408 N.E.2d 675 (1980). There may be further light and guidance regarding the *Sandstrom* instruction. Certiorari was granted February 22, 1982 in *Connecticut v. Johnson,* — Conn. —, 440 A.2d 858 (1981) — U.S. —, 102 S.Ct. 1426, 71 L.Ed.2d 647. It was held by the Connecticut court that other general instructions that would otherwise have cured *Sandstrom* did not do so in that case.

This Court now has the good fortune that a Second Circuit decision well in point on the *Sandstrom* instruction issue has been recently handed down by a Panel of the Court of Appeals, Second Circuit. The case is *Nelson v. Scully, Warden,* 672 F.2d 266 (2d Cir. 1982). Circuit Judge Friendly wrote the majority opinion, joined in by Circuit Judge Kaufman, with Circuit Judge Oakes dissenting. The ruling reversed the grant of a petition for federal habeas corpus by the district court that was based upon the giving of an instruction held to violate *Sandstrom v. Montana, supra.* The Circuit majority left undetermined the State's procedural objection issue, and also expressly stated there was no occasion to consider whether *Sandstrom* should be applied so as to prevent collateral attack at trials preceding it. At 272, 273 n.6. Circuit Judge Friendly reasoned that in considering the instructions found prejudicial and harmful in *Sandstrom,* the sensible course is to make careful inquiry of the entire charge as required by *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). Judge Friendly, in contrast to the instructions given in the *Nelson* case, characterized the presumption of innocence and the burden of proof beyond a reasonable doubt instructions in *Sandstrom* as "sparse boiler-plate" instructions. He states that the Supreme Court in *Sandstrom* held such sparse instructions as insufficient to cure the presumption charge. Judge Friendly also lists other federal appellate cases where the entire charge was considered to determine whether harm was done by a *Sandstrom* instruction. At 272.

Under this controlling guide, after review of the entire charge in this Conte case, it is my firm conviction that there were other qualifying and explanatory instructions on intent in the charge that eliminated any risk that a conclusive or burden-shifting presumption was conveyed to the jury in violation of due process rights under the Fourteenth Amendment. We deal here with a charge of Arson in the Third Degree; starting a fire in a building with intent to cause damage. The trial judge became specific on intent in relation to this charge with this instruction:

> Intent. We talk about the actor. The defendant must intentionally start a fire. By his intent. He must intend to damage. Because intent is defined this way: Our Penal law says that a person acts intentionally with respect to a result or conduct described by statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.

I will give you the definition again: When his conscious objective is to, his conscious objective is to cause such result or engage in such conduct intentionally; a person is presumed to intend the ordinary and natural consequences of his act. I will say that again. A person is presumed to intend the ordinary and natural consequences of his act. R. 671.

... Consequently, we have to rely upon the facts and circumstances surrounding the act. R. 672.

The trial judge in a later instruction on intent made these important statements: ... I have previously defined intent. You are presumed to intend the ordinary and natural consequences of your act. Using the same definition of intent in reaching your verdict. The element of intent must be considered. The actual intent must be found on the basis of the facts as you believe the evidence proves them to be or have occurred. You must decide from the circumstances what the intention of the defendant was.... R. 676.

The Trial Judge plainly and simply charged the jury that to convict of the crime of Arson Third Degree, it had to be proven beyond a reasonable doubt not only that the defendant intentionally started a fire of the building, but also that his intent was to cause damage to the building by starting a fire. R. 672. *Sandstrom* states that the threshold inquiry in ascertaining the constitutionality of the presumption instruction is to determine the nature and the way in which a reasonable juror would interpret the instruction. *Sandstrom v. Montana, supra,* 442 U.S. at 514, 99 S.Ct. at 2454. From the tenor of the entire charge here, and in view of the type crime charged and to be considered by a jury, the several sentences on presumption fade into insignificance and fall far short of mandating any presumption that shifted any burden upon the defendant violative of due process. Finally, the standard and detailed instructions on presumption of innocence and burden of proof beyond a reasonable doubt, stressed in the *Nelson* case, were given by the Trial

Judge. R. 677–79. A significant part in these instructions is that the burden of proving guilt beyond a reasonable doubt rests upon the Prosecution throughout the case and is never shifted from the Prosecution. My conclusion upon this Ground 2 is there was no violation of due process in the instructions. The ruling of *Sandstrom* is clearly distinguishable when the instructions are read as a whole, and federal habeas corpus relief is not warranted.

The petition is denied and dismissed on the merits in its entirety.

It is so Ordered.