**Salvador GALDAMEZ, Petitioner–Appellant,**

**v.**

**John P. KEANE, Warden, Superintendent of State Correctional Facility, Respondent–Appellee,**

**Docket No. 03–2595.**

United States Court of Appeals, Second Circuit.

Argued: April 20, 2004.

Decided: Jan. 4, 2005.

Daniel A. Hochheiser, Hochheiser & Hochheiser, New York, NY, for Petitioner–Appellant.

Andrea M. Digregorio, District Attorney's Office for Nassau County, Mineola, NY, for Respondent–Appellee.

Before: SACK, SOTOMAYOR, Circuit Judges and KAPLAN, District Court Judge.*

SOTOMAYOR, Circuit Judge.

Petitioner-appellant Salvador Galdamez ("Galdamez") appeals from a denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254, filed on August 4, 2003, in the United States District Court for the Eastern District of New York. *See Galdamez v. Keanne*, Nos.2000–CV–4066, 03–MISC–0066, 2003 WL 21847382 (E.D.N.Y. Aug. 4, 2003) (Weinstein, J.). Respondent-appellee John Keane ("respondent" or "the state") contends that Galdamez failed properly to exhaust his state remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) when he submitted his Appellate Division

---

* The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

briefs to the New York Court of Appeals without specifically identifying issues for review in his letter application for leave to appeal. The state argues that, absent a showing of cause for the default and actual prejudice, the petition is procedurally barred. We hold that where a habeas petitioner (1) submits to the New York Court of Appeals his or her Appellate Division briefs and a letter application seeking leave to appeal that did not identify particular issues for that court's review, and (2) leave to appeal was denied by the New York Court of Appeals without stating that the denial was due to petitioner's failure to identify particular issues for review, then a habeas petitioner has properly exhausted his or her federal claims pursuant to § 2254. On the substantive Confrontation Clause and due process claims, we affirm the district court's denial of Galdamez's petition for a writ of habeas corpus.

## BACKGROUND

On September 18, 1997, a jury in the County Court of Nassau County found Salvador Galdamez guilty of the charges of rape in the first degree, sexual abuse in the first degree and unlawful imprisonment in the second degree. The victim was Galdamez's co-worker. She and another co-worker testified as eyewitnesses to the rape and both identified Galdamez as the rapist. Galdamez testified in his own defense. Over defense counsel's objection, the prosecutor attempted several times to cross-examine Galdamez on statements allegedly made by him to persons who were not to be called as witnesses at the trial.[1] The judge later instructed the

jury to "totally disregard" these questions and responses.

In his briefs to the Appellate Division following conviction, Galdamez raised three claims, namely that he was (1) "Denied His Sixth Amendment Right to Be Confronted With the Witnesses Against Him" (2) "Deprived of the Right To Be Tried Solely On The Basis of the Evidence Presented" and that (3) "The Conviction for Unlawful Imprisonment Should Be Dismissed." In an order dated May 24, 1999, the Appellate Division affirmed the judgment of conviction. *See People v. Galdamez*, 261 A.D.2d 635, 690 N.Y.S.2d 459 (2d Dept.1999). The Appellate Division specifically held that the evidence was legally sufficient to sustain the unlawful imprisonment conviction and that "the verdict of guilt was not against the weight of the evidence" with respect to the unlawful imprisonment claim. *Id.* at 636, 690 N.Y.S.2d 459. The court held also that "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit." *Id.*

On June 18, 1999, Galdamez applied to the Court of Appeals for leave to appeal. The body of counsel's letter on his behalf stated: "Enclosed please find copy [sic] of the decision of the Appellate Division affirming this conviction. The appellant hereby requests leave to appeal to this Court." On July 13, 1999, defense counsel sent to the Court of Appeals copies of the briefs submitted to the Appellate Division and the Appellate Division's decision affirming the conviction. The body of that letter stated: "Enclosed please find briefs submitted to the Appellate Division together with the decision affirming the convic-

---

1. In particular, Galdamez complained to the trial court that the prosecutor, while asking his questions, improperly consulted and gestured with a piece of paper, suggesting to jurors that the prosecutor possessed evidence against Galdamez that the jury had not seen.

The prosecutor explained to the court that he picked up the paper, which was the sworn statement of a witness who was not called, to show the court that he did have a good faith basis for asking petitioner about the statements.

tion." Three days later, on July 16, 1999, the Court of Appeals Clerk's Office sent a letter to defense counsel identifying the Hon. George Bundy Smith as the judge assigned to review Galdamez's application and stating, *inter alia:*

> Applicant's communications to the assigned Judge must be mailed *within three weeks* after the date of this letter, and a copy must be served on each adverse party.
>
> Particular written attention should be given to identifying *reviewability* and *preservation* issues (Rules of Practice, § 500.10[a] ). Any responsive communications must be mailed *within two weeks* after the date of the applicant's communication, with a copy also served on each adverse party.

Galdamez did not correspond further with the Court of Appeals. In its letter of opposition to his application for leave to appeal, the state argued that because Galdamez had "set[ ] forth no reason why leave should be granted," the court should deny his application. On August 12, 1999, leave to appeal was denied. *See People v. Galdamez,* 93 N.Y.2d 1018, 697 N.Y.S.2d 577, 719 N.E.2d 938 (1999) (Smith, J.). The certificate denying leave stated:

> I, [Associate Judge] George Bundy Smith ... do hereby certify that upon application timely made by [Galdamez] for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein, there is no question of law presented which ought to be reviewed by the Court of Appeals and permission to appeal is hereby denied.

On July 12, 2000, Galdamez filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York, raising the same claims he had pressed on direct ap-peal. In a decision filed August 4, 2003, the district judge denied the petition. With respect to the issue of exhaustion, Judge Weinstein .noted that prior to the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1218 (1996), amending the relevant federal habeas statute, 28 U.S.C. § 2254, a federal habeas petition containing any unexhausted claims required dismissal. The court observed that AEDPA now permits a district court to deny a petition on the merits as a matter of discretion, even if the petitioner pressed some unexhausted claims in his or her habeas petition. *See* 28 U.S.C. § 2254(b)(2). Without expressly holding that Galdamez had in fact failed properly to exhaust his state remedies, Judge Weinstein denied the petition on the merits. The district court nevertheless granted a certificate of appealability regarding the prosecutor's indirect use of hearsay during his cross examination of Galdamez, an issue that. implicated Galdamez's Confrontation Clause and Due Process claims.

This appeal timely followed.

## DISCUSSION

On appeal, the state argues as it did below that Galdamez procedurally defaulted his petition because by submitting his Appellate Division briefs to the Court of Appeals without identifying the issues for which he sought review pursuant to New York Court Rules § 500.10(a) (McKinney 2004), he failed to exhaust properly his state remedies. Absent a showing of cause or prejudice, the state maintains, Galdamez's petition for a writ of habeas corpus must be denied. We disagree. Today we resolve a disagreement among the district courts[2] and hold that Galdamez

---

**2.** *Compare Meatley v. Artuz,* 886 F.Supp.     1009, 1014 (E.D.N.Y.1995) (holding that the

properly exhausted his state court remedies as required by § 2254(b)(1) and (c) when he submitted his Appellate Division briefs with his letter application for leave to appeal to the New York Court of Appeals, notwithstanding that the letter did not identify particular issues for that court's review.

## I. Exhaustion Generally

■ Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The exhaustion requirement has long been a staple of habeas jurisprudence. *See, e.g., Ex parte Royall*, 117 U.S. 241, 252, 6 S.Ct. 734, 29 L.Ed. 868 (1886). 28 U.S.C. § 2254(b)[3] and (c) now codifies this requirement. Section 2254(c) states that:

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

New York Court of Appeals had been "fairly alerted" to a habeas petitioner's legal arguments when only briefs were submitted with the letter application, and the Court of Appeals' standard practice was to review both counsel's letter and the appellate briefs and because petitioner's constitutional claims were fairly laid out in his briefs), *and Manning v. Artuz*, No. 94–CV–3325, 1996 WL 294359, at *4 (E.D.N.Y. May 29, 1996) (adopting *Meatley* rationale), *with Perez v. Greiner*, No. 99 Civ 11806, 2000 WL 915114, at *6 (July 5, 2000) (Report & Recommendation of Peck, M.J.) (rejecting *Meatley* as "no longer good law" and holding that petitioner did not adequately exhaust his claims in state court in that he failed to identify particular issues in his leave application), *adopted*, 99 Civ 11806 (June 24, 2001), *vacated as moot*, 296 F.3d 123 (2d Cir.2002). *See also Howard v. Lacy*,

28 U.S.C. § 2254(c). The Supreme Court has warned against interpreting this provision too narrowly, holding that it requires "only that state prisoners give state courts a *fair* opportunity to act on their claims." *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. 1728 (emphasis in original).

■ Comity concerns lie at the core of the exhaustion requirement. As the Supreme Court explained:

State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief. This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance.

*Id.* at 844–45, 119 S.Ct. 1728 (internal citations and quotations omitted); *see Ex parte Royall*, 117 U.S. at 251, 6 S.Ct. 734 (noting that state "courts [are] equally

58 F.Supp.2d 157, 164 n. 5 (S.D.N.Y.1999) (adopting Report & Recommendation of Peck, M.J.) (rejecting *Meatley* rationale and noting competing lines of cases).

3. In relevant part, Sec. 2254(b)(1) states that

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

bound to guard and protect rights secured by the Constitution"); *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (characterizing exhaustion as "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings"); *Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc) (noting that the requirement "expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions"). The procedural default doctrine protects the integrity of the exhaustion rule, ensuring that state courts receive a legitimate opportunity to pass on a petitioner's federal claims and that federal courts respect the state courts' ability to correct their own mistakes. *See Edwards v. Carpenter,* 529 U.S. 446, 452–53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (discussing "interplay" between doctrines of exhaustion and procedural default); *O'Sullivan,* 526 U.S. at 848, 119 S.Ct. 1728 (citing with approval portion of Justice Stevens' dissent addressing relationship between exhaustion and procedural default); *id.* at 851–54, 119 S.Ct. 1728 (Stevens, J., dissenting); *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "When a prisoner has deprived the state courts of such an opportunity, he has procedurally defaulted his claims," *O'Sullivan,* 526 U.S. at 854, 119 S.Ct. 1728 (Stevens, J., dissenting), therefore barring habeas review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

■ The exhaustion inquiry has come to embody, therefore, two related questions. First, a federal court must examine whether applicable state court remedies remain available to the petitioner. The petitioner need not have invoked every possible avenue of state court review. *See Wilwording v. Swenson,* 404 U.S. 249, 249–50, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam) (rejecting argument that petitioner should have invoked "any of a number of possible alternatives to state habeas including 'a suit for injunction, a writ of prohibition, or mandamus or a declaratory judgment in the state courts,' or perhaps other relief under the State Administrative Procedure Act.... as a prerequisite to taking [ ] claims to federal court"). Instead, "state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728 (emphasis added). A "complete round," *id.,* requires that the petitioner must "present[ ] his [or her] claim to the highest court of the state." *Morgan v. Bennett,* 204 F.3d 360, 369 (2d Cir.2000). The petitioner must apprise the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition. *See Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997).

■ Second, and often of central concern in habeas proceedings, the federal court must assess whether the petitioner "*properly* exhausted those [state] remedies, *i.e.,* whether [petitioner] has *fairly presented* his [or her] claims to the state courts," *O'Sullivan,* 526 U.S. at 848, 119 S.Ct. 1728 (second emphasis added), such that the state court had a fair opportunity to act. This latter inquiry embodies the concept of procedural default. *See Edwards,* 529 U.S. at 452, 120 S.Ct. 1587 (describing "inseparability of the exhaustion rule and the procedural-default doctrine"). A petitioner may not evade ex-

haustion's strictures by defaulting his or her federal claims in state court. *See Coleman*, 501 U.S. at 732, 111 S.Ct. 2546. Thus, a petitioner cannot claim to have exhausted his or her remedies by dint of no longer possessing "the right under the law of the State to raise, by any available procedure, the question presented," 28 U.S.C. § 2254(c), if at some point the petitioner had that right but failed to exercise it. *See O'Sullivan*, 526 U.S. at 848, 119 S.Ct. 1728 (noting that a petitioner who let the limitations period for filing direct appeals lapse, thereby rendering state remedies unavailable, would have failed to "fairly present" his or her federal claims to the state courts, thereby procedurally defaulting the federal habeas petition).

## II. Exhaustion of New York State Remedies

 In New York, to invoke "one complete round of the State's established appellate review process," *id.* at 845, a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal. *See Morgan*, 204 F.3d at 369; N.Y.Crim. Proc. Law § 460.20 (McKinney 1994). The application for leave to the Court of Appeals may be in letter form. New York Court Rules § 500.10(a) (McKinney 1999). New York Court rules require that leave applicants submit to the Court of Appeals briefs and other documents from the lower courts to "identify the issues on which the application is based" and to pay "[p]articular written attention ... to identifying problems of reviewability and preservation of error." *Id.*[4]

Under limited circumstances, we assume that the Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below. We therefore consider these claims procedurally defaulted for habeas purposes because of the petitioner's failure to exhaust the claims properly before the state's highest court. In *Grey v. Hoke*, 933 F.2d 117 (2d Cir.1991), for example, a petitioner submitted an application consisting of (1) his brief to the Appellate Division raising three claims, and (2) a letter to the Court of Appeals requesting review of only one claim. *Id.* at 120. We held that "[t]he fair import of petitioner's submission to the Court of Appeals ... was that the other two [claims] had been abandoned." *Id.* Accordingly, we held that those two claims had been technically exhausted but procedurally defaulted. *Id.* ("For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested ... would undermine the very considerations of comity that the rules of exhaustion were designed to protect."). We noted that the "only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to [the Appellate Division]." *Id.* Because we surmised that the Court of Appeals would construe petitioner's application as implicitly *eliminating* issues for review, we declined to hold that New York's highest court has " 'a duty to look for a needle in a paper haystack.' " *Id.* at 120 (quoting *Mele v. Fitchburg Dist. Court*, 850 F.2d 817, 822 (1st Cir.1988)); *see also Morgan*, 204 F.3d at 370–71 (interpreting *Grey* as exemplifying abandonment of claims).

Similarly, in *Jordan v. Lefevre*, 206 F.3d 196 (2d Cir.2000), we held that a petitioner had not fairly presented his claims to the

---

4. Identical requirements were in effect at the time Galdamez sought leave to appeal. *See* New York Court Rules § 500.10(a) (McKinney 1999).

Court of Appeals when the accompanying letter argued "a single claim at length and [made] only [a] passing reference to possible other claims to be found in the attached briefs." 206 F.3d at 198. The leave application "forcefully argued" a claim under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) in the first three paragraphs, but made no reference to other claims. *Id.* at 198. In the fourth paragraph, the application exhorted the court to grant leave to appeal "[f]or all of these reasons and the reasons set forth in [petitioner's] Appellate Division briefs." *Id.* We held that this letter did not "fairly present" other claims in the Appellate Division briefs to the Court of Appeals. *Id.* at 198–99. The letter's concluding language "might as easily have been a reference to additional reasons for reviewing the *Batson* claim as an incorporation of other, different claims asserted in the lower court." *Ramirez v. Attorney Gen. of N.Y.,* 280 F.3d at 87, 97 (2d Cir. 2001) (interpreting *Jordan*'s rationale). We noted that had petitioner "more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail" but requested review of "all issues outlined" in the briefs, the claims "would have been fairly presented to the Court of Appeals." *Jordan,* 206 F.3d at 199 (internal quotations omitted).

*Morgan v. Bennett,* 204 F.3d 360 (2d Cir.2000) illustrates this latter proposition. The petitioner in *Morgan* submitted an application for leave to appeal that did not specify any particular issue for review, but concluded: "I am enclosing copies of the briefs filed in the Appellate Division and that Court's order and opinion.... We request this Court to consider and review all issues outlined in defendant-appellant's brief and *pro se* supplemental brief." *Id.* at 369–70 (emphasis omitted). The petitioner later submitted a follow-up letter

highlighting a particular issue raised in the *pro se* brief. *Id.* We held that the initial leave application requesting review of "all issues outlined" in the accompanying briefs was "sufficiently specific to alert the Court of Appeals that Morgan sought review of all the issues raised in his *pro se* " brief. *Id.* at 371. We did not "think it appropriate to infer that the New York Court of Appeals would construe counsel's second letter as *eliminating issues* as to which review had been expressly requested." *Id.* (emphasis added). Rather, the language in *Morgan* "unmistakably requested review of each point in the Appellate Division Brief." *Ramirez,* 280 F.3d at 97; *id.* ("References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal.").

### III. *Galdamez's Application to the Court of Appeals*

As noted, Galdamez did not specify particular claims in his application for leave to appeal, but simply enclosed a copy of the Appellate Division's decision affirming the conviction, and stated that "[t]he appellant hereby requests leave to appeal to this Court." Galdamez later provided the briefs that he had submitted to the Appellate Division, with an accompanying letter stating: "Enclosed please find briefs submitted to the Appellate Division together with the decision affirming the conviction." The state presents essentially two arguments as to why we should consider Galdamez's habeas petition procedurally defaulted for failure to exhaust properly his claims before the New York Court of Appeals.

First, the state argues that under *Grey* and *Jordan,* "[p]etitioner's two letters ... were palpably insufficient to alert the Court to any particular claim(s) that peti-

tioner wanted it to consider," and that the mere inclusion of the briefs to the lower court "was insufficient, by itself, to constitute a 'fair presentation' of issues to the state's highest court." In particular, the state stresses our language in *Grey,* where we "decline[d] to presume that the New York Court of Appeals has a duty to look for a needle in a paper haystack." *Grey,* 933 F.2d at 120 (internal citation and quotations omitted).

This metaphor, however, was born of particular circumstances, and embodies a proposition that should not be overstated as a free-standing principle. We made this declaration after concluding that the petitioner's leave application had affirmatively directed the Court of Appeal's attention *away* from claims contained in the attached briefs. *See id.* Submitting appellate briefs with a terse letter requesting leave to appeal does not communicate to the Court of Appeals that it should focus on some claims to the exclusion of others. *Compare Ramirez,* 280 F.3d at 97 (inferring that leave application's reference to portion of Appellate Division brief in express support of one federal claim could not suffice to present entirely different claim as basis for review by Court of Appeals), *with Morgan,* 204 F.3d at 371 (rejecting inference that a supplemental letter to Court of Appeals that identified specific issues for review "eliminat[ed] issues as to which review had [previously] been expressly requested").

■ On the contrary, we can only conclude that the Court of Appeals would construe the concise application in this case as a request for review of *all* of the issues outlined in the briefs. While the petitioner did not expressly request review of "all issues" as in *Morgan, see* 204 F.3d at 369, such an explicit statement is unnecessary where the only "fair import" of the total application suggests a request for review of all the issues argued to the Appellate Division.[5] *Grey,* 933 F.2d at 120. We noted in *Ramirez* that "[r]eferences to attached briefs without more [may] preserve issues ... if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal." 280 F.3d at 97. It is not in dispute that Galdamez's Appellate Division briefs fairly presented his claims that the prosecutor's indirect use of hearsay claims violated his Confrontation Clause and due process rights. Because the briefs fairly presented the federal claims, and Galdamez's leave application reasonably could be construed only as a request for further appellate review of all issues in the attached briefs, we hold that Galdamez properly exhausted his federal

---

5. This line of exhaustion cases rests on a series of reasonable surmises regarding the behavior of the Court of Appeals in reviewing leave applications. But surmise is no substitute for affirmative knowledge regarding the practices of that court. We assumed in *Grey* and *Jordan,* for example, that judges of that esteemed body would construe the content of a particular application as eliminating claims on appeal. However, it may very well be that Court of Appeals judges tasked with reviewing those applications consider *all* issues in the briefs, regardless of the applications' degree of specificity, thereby seriously calling into question the propriety of this entire line of cases. We note that our desire to defer to the competence of state courts has motivated this particular line of exhaustion jurisprudence. As we strive for comity, however, we should be vigilant against overreaching, lest we imply a lack of conscientiousness on the part of the highly competent Court of Appeals.

In the proper circumstances, we would consider certifying this important question to the Court of Appeals itself. But because the exhaustion issue is not determinative of the outcome here, we are unable to bring it to the attention of New York's highest court. *See* New York Court Rules § 500.17(a) (McKinney 2004) (permitting certification only of determinative questions in a pending case).

claims before the Court of Appeals. *See Morgan*, 204 F.3d at 370–71; *see also O'Sullivan*, 526 U.S. at 844, 119 S.Ct. 1728 (warning against interpreting § 2254(c) too narrowly, holding that it "requires only that state prisoners give state courts a *fair* opportunity to act on their claims").

Our exhaustion analysis does not end there, however. Nestled within the state's first argument is the kernel of a second argument as to why we should consider Galdamez's petition to be in procedural default. In essence, Galdamez's failure to "identify the issues on which the application is based" in accordance with New York Court Rules § 500.10(a) suggests that his application was in fact *denied* for this very reason. The state emphasizes, for example, that it had opposed petitioner's application

> solely on the basis that petitioner had failed to identify any legal issue for further appellate review.... [F]or that reason, the People did not address any of the claims petitioner had raised in the intermediate appellate court, nor did the People bring to the New York Court of Appeals' attention any issues regarding [Galdamez's federal claims].

Respondent points to the letter sent by the court clerk advising petitioner of the identity of the reviewing judge, and stating that "[p]articular written attention ... be given to identifying reviewability and preservation issues (Rules of Practice, § 500.10[1] )." As further support for its position, the state emphasizes the decision denying leave to appeal, in which "the New York Court of Appeals did not set forth that it had considered any federal constitutional issue." In highlighting the content of the court's certificate denying leave, however, the state proves too much, illustrating why procedural default cannot apply in these circumstances.

■ Generally, procedural default for failure to comply with a state procedural requirement bars habeas review only when the state court rendering the judgment "'clearly and expressly states that its judgment rests on a state procedural bar.'" *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir.1996) (quoting *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). For example, when a state court disposing of an appellant's remaining unanalyzed claims uses a general catch-all phrase referring both to a procedural bar *and* to the claims' merits, such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," we have held that the state court has not spoken clearly enough regarding its reliance on the procedural bar to preclude review on the merit by the habeas court. *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir.2000). In contrast, where a state court explicitly says that a particular claim fails for a procedural reason, but still reaches the merits, that claim remains procedurally barred. *See Harris*, 489 U.S. at 264 n. 10, 109 S.Ct. 1038 (observing that state courts should "not fear reaching the merits of a federal claim in an alternative holding" (emphasis omitted)); *Fama*, 235 F.3d at 810 n. 4 (holding that when a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved").

Nothing in the certificate denying leave to appeal suggests that Galdamez's application was denied for lack of specificity or any other procedural reason. The certificate instead describes Galdamez's application as "timely made" and states that a decision was made "upon the record and proceedings herein." The fact that the state raised a putative procedural ground in its opposition to Galdamez's application does not mean that the Court of Appeals

was constrained from reviewing the merits of his claims or that the state's argument dictates our interpretation of the face of the certificate denying leave. Indeed, as we have noted, it is far more likely that the Court of Appeals understood the letters as seeking leave to raise the issues presented in the accompanying briefs. *Cf. Ryan v. Miller*, 303 F.3d 231, 246 & n. 6 (2d Cir.2002) (concluding, where Appellate Division disposed of multiple claims as "either unpreserved for appellate review or without merit," but record showed that claim in issue was in fact preserved, that claim was necessarily adjudicated on the merits). The certificate here explicitly references review of "the record and proceedings herein" and denies leave because "no question of law" is presented warranting review.

 As there is no reason to suppose that Galdamez's petition was denied because of lack of specificity, we reach the merits of his habeas petition. Judge Weinstein issued a certificate of appealability on an issue he did not address directly—the prosecutor's indirect use of hearsay in posing a question, implicating Galdamez's Sixth Amendment and Due Process claims. Like the district court, we need not reach the substance of whether the prosecutor's conduct constituted constitutional error. Instead, we agree with the district judge's alternative holdings that the trial court judge's curative instruction to the jury alleviated any potential error, *see Galdamez*, 2003 WL 21847382, at **12–13; *see also Greer v. Miller*, 483 U.S. 756, 766 & n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), and that any potential error was harmless in light of the "weighty" evidence brought by the state, such as the victim's eyewitness testimony identifying Galdamez as not only her rapist but also as her coworker. *Cf. Brown v. Keane*, 355 F.3d 82, 92 (2d Cir.2004);

*see Galdamez*, 2003 WL 21847382, at *13 ("The probability of [the] verdict being different had the prosecutor not attempted to impeach [Galdamez] is quite low.").

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Galdamez's petition for a writ of habeas corpus.