Jua SMITH, Petitioner–Appellant,

v.

George DUNCAN, Respondent–Appellee.

Docket No. 04–0604–PR.

United States Court of Appeals, Second Circuit.

Argued: Dec. 16, 2004.

Decided: June 21, 2005.

Roland R. Acevedo, New York, New York, for Petitioner–Appellant (on submission).

Thomas J. Spota, District Attorney of Suffolk County, New York (Guy Arcidiacono, Assistant District Attorney, of counsel, Elisa Baez, intern, on the brief), Riverhead, New York, for Respondent–Appellee (on submission).

Before: MESKILL, CALABRESI, and WESLEY, Circuit Judges.

WESLEY, Circuit Judge.

Petitioner Jua Smith appeals from an order of the United States District Court for the Eastern District of New York (Weinstein, J.) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Smith was convicted by a jury in Suffolk County Court of second degree murder in connection with the 1996 shooting death of Jacob Seavey. The district court denied the petition but issued a Certificate of Appealability on the issue of the admissibility of a 911 tape that was excluded from evidence at trial. We hold that the district court correctly denied the petition because the issue was procedurally defaulted.

## Background

In September 1997, Petitioner–Appellant Jua Smith, then seventeen years old, was found guilty by a jury in Suffolk County Court of intentionally murdering Jacob Seavey, a longtime childhood friend. Seavey was killed instantly by a single gunshot at Smith's home in Brentwood, New York, on April 30, 1996. Immediately following the shooting, Smith called 911 and reported the incident, repeatedly asking the operator to send police.

When the police arrived, they found Smith sitting on the stoop outside his home on the phone with the 911 operator. They arrested Smith, who was quiet and cooperative, and brought him to the police station for questioning. Throughout the interrogation, and to this day, Smith's version of the events has been the same. Smith had allowed Seavey, whom he claims he trusted at the time, into his home. The two were talking in Smith's bedroom when Seavey received a page from his mother. While Seavey made a phone call, Smith went to the bathroom and was there for about ten minutes. When Smith left the bathroom, Seavey was standing immediately outside in the hallway, pointing a shotgun at Smith's head. Smith asked, "What are you doing? Get that out of my face." Receiving no response, Smith struggled with Seavey for the gun. Smith took the gun from Seavey and stepped back. At that point, Smith claims that Seavey reached for a knife in his pocket. Smith contends that he fired the gun at Seavey without thinking. According to Smith, he called 911 immediately after the shooting.

At trial, Smith did not deny shooting Seavey, but maintained that he acted in self-defense, believing that Seavey's actions were part of a gang reprisal. He testified that he and Seavey had been part of the same gang whose activities included selling drugs, stealing cars, and robbing people. Smith's testimony about his gang involvement with Seavey and others was corroborated by the testimony of his father, Rudolph Smith. Rudolph also testified that his son had broken away from the gang when they began selling crack-cocaine. At that point, Smith left his father's house in New York to live with his mother in Washington, D.C. However, in 1995, Smith's mother died, and Smith returned to live with his father.

When Smith returned to New York, Seavey and other gang members pressured him to rejoin their group. Smith testified that because he dropped out of the gang, members were trying to get back at him. He claimed that on several occasions Seavey, along with others in the gang, threatened and assaulted him. Because of the gang's threats, Smith contended that he lived in fear—returning directly home after school, staying inside with the curtains closed, and changing his path to and from school to avoid the gang.

The prosecution challenged Smith's testimony about his fear of the gang. In addition to suggesting Smith's gang story was fabricated, the prosecutor introduced forensic evidence that Seavey was lying on the floor when shot, not standing as Smith had claimed.

In response, the defense sought to introduce the 911 tape that recorded Smith's conversation with the operator after the shooting, and the testimony of Smith's aunt, who would have testified about Smith's fear of gang violence in the weeks leading up to the incident. The trial court denied both requests. The court initially held that the 911 tape was inadmissible because it believed that Smith had given the operator a false name, Holt–Smith, an indication that he had time to reflect on his actions. After the defense established that Smith regularly used a hyphenated

version of his mother's and father's surnames (Holt–Smith) and therefore was *not* lying to the operator, the trial court reconsidered the issue. Ultimately, however, the court decided not to allow the jury to hear the 911 tape.[1]

On July 25, 1997, the jury returned a guilty verdict for murder in the second degree, and Smith was sentenced to an indeterminate term of incarceration of twenty-five years to life. Smith appealed to the New York Appellate Division, Second Department, arguing, *inter alia,* that the 911 tape was erroneously excluded. Specifically, he argued that the tape was an exception to the hearsay rule—that it was an excited utterance or present sense impression, or that it refuted that Smith's proffered fear of the gang was a recent fabrication. The Appellate Division unanimously affirmed his conviction without specifically mentioning the 911 tape, concluding, "The defendant's remaining contentions are either unpreserved for appellate review or without merit." *People v. Smith,* 261 A.D.2d 423, 424, 689 N.Y.S.2d 230 (2d Dept. 1999). Smith's motion for leave to appeal to the New York Court of Appeals was denied. *People v. Jua Smith,* 93 N.Y.2d 1006, 695 N.Y.S.2d 752, 717 N.E.2d 1089 (1999) (Ciparick, J.).

On July 12, 2000, Smith filed a petition for a writ of habeas corpus in the Eastern District of New York (Weinstein, J.), arguing that the exclusion of the 911 tape and his aunt's testimony at trial amounted to a denial of due process in violation of the United States Constitution—an argument he had not previously presented to the State appellate courts. By judgment dated August 5, 2003, the district court determined that both issues "are now procedurally defaulted" because Smith in his state appeal made "no argument that exclusion constituted a violation of the federal constitution."

Judge Weinstein nevertheless expressed his concern that the exclusion of the 911 call was "troubling." Though he felt that a "federal trial court would almost certainly have admitted it," he reasoned that the "matter was within the trial court's discretion." Accordingly, he denied Smith's petition, but issued a Certificate of Appealability (COA) on the issue of the 911 call. This appeal followed.

### Discussion

■ Where an appeal follows the denial of a petition for a writ of habeas corpus, we review *de novo* the court's legal conclusions and review its factual findings for clear error. *See Anderson v. Miller,* 346 F.3d 315, 324 (2d Cir.2003).

### I. *Exclusion of the Testimony of Eleanor Smith*

■ Smith claims, first, that the state trial court violated his constitutional right to a fair trial by excluding the testimony of his aunt, Eleanor Smith, who could confirm that Smith had previously voiced grave concerns that Seavey and Seavey's associates in the gang were threatening him and that, because of those threats, Smith lived in constant fear. The district court held that because the "[e]xclusion of the aunt's testimony was not raised in the [New York] Court of Appeals," the issue had not been properly preserved and therefore was procedurally defaulted.

---

1. The court based its decision on *People v. Vasquez,* 88 N.Y.2d 561, 647 N.Y.S.2d 697, 670 N.E.2d 1328 (1996), which the court deemed to be "very close to the facts of this case." In *Vasquez,* the New York Court of Appeals held that it was not error to exclude a tape of an anonymous 911 call despite defendants' argument that it was a "present sense impression."

We agree with the district court that Smith's letter to the New York Court of Appeals did not properly preserve this issue. After examining the record in this case, we can find no mention of any error—state or federal—in petitioner's leave application regarding the exclusion of Eleanor Smith's testimony. Although Smith raised a claim about the "erroneous exclusion of the 911 tape," and a separate claim involving a "due process violation in the grand jury," Smith nowhere contested the exclusion of Ms. Smith's testimony. Furthermore, we reject his argument that the New York high court should have been alerted to this issue by the prosecution's brief mention of it.[2]

█ "In New York, to invoke 'one complete round of the State's established appellate review process' [*O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ], a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). "New York Court rules require that leave applicants submit to the Court of Appeals briefs and other documents from the lower courts to 'identify the issues on which the application is based' and to pay '[p]articular written attention ... to identifying problems of reviewability and preservation of error.'" *Id.* (quoting New York Court Rules § 500.10(a) (McKinney 1999)).[3]

█ Generally "we assume that the Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below" where those claims were not presented to the New York high court for review. *Galdamez*, 394 F.3d at 74. In *Grey v. Hoke*, where a petitioner requested review by the New York Court of Appeals of only one of three issues presented to the Appellate Division, we held that the other claims were not presented, noting that "[f]or a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect." 933 F.2d 117, 120 (2d Cir.1991). Even if the original Appellate Division briefs are submitted along with the leave application, New York's highest court has no duty to "look for a needle in a paper haystack." *Galdamez*, 394 F.3d at 74 (quoting *Grey*, 933 F.2d at 120) (quotation marks omitted). Because Smith's letters to the New York Court of Appeals nowhere raised the issue of the exclusion of his aunt's testimony, we agree with the district court that this issue is procedurally defaulted.

## II. *Exclusion of the 911 Tape*

Smith next claims that the state trial court violated his constitutional right to a fair trial by excluding the 911 call recording. Smith argues, *inter alia*, that because "the only issues before the jury were [his] intent and whether his actions were justified under the circumstances, ... [t]he 911 tape was a critical piece of evidence that would have conveyed to the

---

**2.** *But cf. Twitty v. Smith*, 614 F.2d 325, 332 (2d Cir.1979) (noting that state brief resolved "[a]ny doubt" that the federal nature of the claim had adequately been called to the state court's attention).

**3.** New York Court Rule section 500.10 governing criminal leave applications has subsequently been amended and is recodified at section 500.20. N.Y. Comp.Codes R. & Regs. tit. 22, § 500.20.

jury [his] belief that he was in danger and [his] thought that Seavey's actions were part of the gang's plan to retaliate against him." Several times during the course of the call, Smith told the operator that other people might be on the way to his house, yelling, "I think there's gonna be more of them." After the operator told him to calm down, he said, "I don't know if somebody else is coming man, call the f—ing cops, I don't know if someone else is coming man, I don't know if someone else is coming man, call the cop man, call the cop man, call the f—ing cop." He repeatedly told the operator that the police should hurry. Smith's counsel argued that the fear and urgency in Smith's voice was evident from the tape and was therefore crucial to establishing the only issue at trial—Smith's state of mind.

 Despite finding the claim procedurally defaulted, the district court found the trial court's exclusion of the tape "troubling" and granted a COA on only the substantive question of whether the 911 tape was improperly excluded. However, appellate review of a habeas petition denied on both procedural and substantive grounds is contingent on the district court issuing a COA with respect *both* to the procedural and constitutional holdings. *See El Rhagi v. Artuz,* 309 F.3d 103, 105 (2d Cir.2002) (per curiam); *cf. Slack v.*

*McDaniel,* 529 U.S. 473, 484–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). When a COA fails to certify for appeal a district court's procedural default finding, we may construe the filing of a notice of appeal to be a request for a COA on all issues raised in that appeal. *See Cotto v. Herbert,* 331 F.3d 217, 236–37 (2d Cir.2003); *El Rhagi,* 309 F.3d at 106; Fed. R.App. P. 22(b)(2) (authorizing appellate courts to construe a notice of appeal as a request for a COA). We will amend or broaden a COA upon appeal provided that a petitioner makes the necessary showing that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *see Cotto,* 331 F.3d at 237. Because we conclude that the issues presented are adequate to deserve such encouragement, we amend the COA to include the procedural holding.

 At trial, Smith's counsel offered several arguments to persuade the trial judge to admit the 911 tape. Among other things, he argued that the tape was admissible under the excited utterance, present sense impression, or state of mind exceptions to the hearsay rule.[4] At the Appel-

---

4. Offering evidence under the state of mind *exception* to the hearsay rule is different than offering it for a non-hearsay purpose—here, to show declarant's state of mind. The *exception* to the hearsay rule is invoked when the statement is offered for the truth of the matter asserted *and* shows the declarant's state of mind (e.g., "I hate X."). *See* William Payson Richardson & Jerome Prince, Prince-Richardson On Evidence § 8–611 (Richard T. Farrell ed., 11th ed.1995). In contrast, "the mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind ... of the declarant" and is *not* hearsay (e.g. "I am Napoleon."). *Id.* § 8–106.

Smith's counsel significantly failed to argue that the 911 tape was *not* hearsay. If the tape were played for the jury to show Smith's state of mind—i.e. his fear, excitement, agitation— it would not be hearsay because the defense would not be offering it for the truth of the matter asserted. *See Bergstein v. Bd. of Educ.,* 34 N.Y.2d 318, 323–24, 357 N.Y.S.2d 465, 313 N.E.2d 767 (1974); *compare* Federal Rule of Evidence 801(c). The tape would not be offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming. *Cf. United States v. Detrich,* 865 F.2d 17, 21 (2d Cir. 1988) (holding that where a statement is offered as circumstantial evidence of the declar-

late Division, he added an argument not preserved below—that the tape should have been admissible under the recent fabrication doctrine of New York law.[5] Unfortunately, Smith's counsel never argued to the state courts that the exclusion of the 911 tape deprived him of the opportunity to present a meaningful defense in violation of the Federal Constitution. Because this claim was never exhausted and his opportunity to raise it in state court has passed, we agree with the district court's finding of procedural default.

■■■ "Comity concerns lie at the core of the exhaustion requirement." *Galdamez*, 394 F.3d at 72. As the Supreme Court explained:

> State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief. This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the

constitutional violation in the first instance.

*O'Sullivan*, 526 U.S. at 844–45, 119 S.Ct. 1728 (internal citations and quotation marks omitted), *quoted in Galdamez*, 394 F.3d at 72. State "courts [are] equally bound to guard and protect rights secured by the constitution." *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886). "The procedural default doctrine protects the integrity of the exhaustion rule, ensuring that state courts receive a legitimate opportunity to pass on a petitioner's federal claims and that federal courts respect the state courts' ability to correct their own mistakes." *Galdamez*, 394 F.3d at 73. "When a prisoner has deprived the state courts of such an opportunity, he has procedurally defaulted his claims, therefore barring habeas review unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (internal citations and quotation marks omitted).

■■■ Smith does not argue cause and prejudice, nor does he argue that failure to consider this claim will result in a miscarriage of justice.[6] *See Coleman v.*

---

ant's state of mind rather than for the truth of the matter asserted, it is not hearsay). As Smith's state of mind was the only relevant issue at trial, we believe that this point, if made, would have been persuasive. However, as this argument was never made at trial, nor on Smith's appeal, we do not consider it now.

5. That doctrine allows a prior consistent statement to rebut a claim of recent fabrication. *See People v. McDaniel*, 81 N.Y.2d 10, 18, 595 N.Y.S.2d 364, 611 N.E.2d 265 (1993); *see also People v. Harris,* 242 A.D.2d 866, 867, 662 N.Y.S.2d 965 (4th Dept. 1997).

6. The only claim for cause for the default might be appellate counsel's ineffective assis-

tance in failing to raise the constitutional claim. *See Sweet v. Bennett*, 353 F.3d 135, 141 n. 7 (2d Cir.2003). Smith's state appellate counsel also failed to raise the trial counsel's ineffectiveness on direct appeal—a claim that might have been persuasive in state court considering trial counsel's failure to make the appropriate non-hearsay arguments. *See supra* note 4; *see also Aparicio v. Artuz*, 269 F.3d 78, 96 n. 9 (2d Cir.2001).

However, we may not consider this cause for default now because the Supreme Court has held that cause is an "independent constitutional claim" that first must be raised in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *see also Aparicio*, 269 F.3d at 91.

*Thompson,* 501 U.S. 722, 748, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Therefore Smith's only path to reversal is by demonstrating to us that his federal claim was fairly presented to the state court. There are several ways in which a petitioner may apprise the court of the constitutional nature of his claims "even without citing chapter and verse of the Constitution." *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en banc). They include: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* "In all such circumstances the federal habeas court should assume that the state courts, which are obliged, equally with the courts of the Union, ... to guard, enforce, and protect every right granted or secured by the Constitution of the United States, have been alerted to consider, and have considered, the· constitutional claim." *Id.* (internal citations and quotation marks omitted).

In the Appellate Division, Smith's counsel argued that the 911 tape should have been admitted based on exceptions to the hearsay rule or to rebut the prosecution's claim of recent fabrication. She never argued that the trial court's decision to exclude this evidence violated Smith's constitutional rights, nor did she rely on any federal cases employing pertinent constitutional analysis. Furthermore, the state case that Smith's counsel cited, *People v. Buie,* 86 N.Y.2d 501, 634 N.Y.S.2d 415, 658 N.E.2d 192 (1995), referenced federal constitutional cases involving Sixth Amendment confrontation clause violations, not cases involving the right to present a meaningful defense.[7] The closest Smith's counsel came to the federal constitutional argument was her contention that Smith was denied a "fair trial." [8]

---

Thus, even if Smith had argued to us that his appellate counsel caused the default, we could not consider it because he has not brought a claim in state court that his counsel in the state appellate proceedings was ineffective.

In New York, coram nobis is the appropriate remedy for ineffective assistance of appellate counsel. *See People v. Bachert,* 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987). There is no time limit for filing a writ of error coram nobis. *See People v. Richetti,* 302 N.Y. 290, 97 N.E.2d 908 (1951); *see also Fernandez v. Artuz,* 402 F.3d 111, 115–16 (2d Cir.2005). Therefore current counsel may still raise the issue of ineffective assistance in state court. Whether the issue could ultimately be the basis of a federal habeas petition is more problematical. *See, e.g., Triestman v. United States,* 124 F.3d 361 (2d Cir. 1997).

7. *See Buie,* 86 N.Y.2d at 513, 634 N.Y.S.2d 415, 658 N.E.2d 192 (*citing United States v. Inadi,* 475 U.S. 387, 395–96, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (holding that confrontation clause did not require showing of unavailability of declarant as a condition to admission of out-of-court statements of nontestifying coconspirator) and *White v. Illinois,* 502 U.S. 346, .112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (holding that the prosecution was not required to produce the four-year-old victim of a sexual assault at trial or to have the trial court find that the victim was unavailable for testimony before the out-of-court statements of the child could be admitted under the spontaneous declaration and medical examination exceptions to the hearsay rule)).

8. Appellate counsel's efforts to add the unpreserved recent fabrication argument in conjunction with her expressed concern that Smith was denied a fair trial was most likely an attempt to invoke the interest of justice jurisdiction of the Appellate Division. See N.Y.Crim. Proc. Law § 470.15(3)(c), (6)(a). However New York does not recognize interest of justice review to be "virtually identical" to review of specific constitutional claims.

As this Court has explained, "The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a 'fair trial.'" *Daye,* 696 F.2d at 193. "Obviously not every event in a criminal proceeding that might be described as 'unfair' would be a violation of the defendant's rights under the Constitution." *Id.* In *Daye,* we noted that the test for when such a complaint should alert the state court to a constitutional claim centers on the factual allegations supporting the claim. *Id.*

> Some will be of patently constitutional dimension. If the defendant claimed that he was accused of one crime but convicted of an entirely different crime and hence was denied a fair trial, no reasonable jurist would doubt that the defendant's claim implicated his constitutional right to due process of law. In contrast, a defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers.

*Id.* The relevant inquiry in Smith's case, then, is whether his claim that the exclusion of the 911 tape was erroneous under New York law was enough to alert the court of his claim that it also denied him a meaningful opportunity to present a defense. *See Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

We hold that it was not. As discussed earlier, to be eligible for habeas relief, the "substance" of Smith's federal claim must have been "fairly presented" to the state appellate court. *Picard v. Connor,* 404 U.S. 270, 275, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). "In developing and refining the 'fairly present[ed]' standard, the Su-

preme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." *Jackson v. Edwards,* 404 F.3d 612, 619 (2d Cir.2005). For example, in *Anderson v. Harless,* 459 U.S. 4, 7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the Court "held that a habeas petitioner had not fairly presented a federal due process claim in state court when he argued that the trial court's jury instruction was 'erroneous,' and cited only a state law case" for support. *Jackson,* 404 F.3d at 619 (quoting *Anderson,* 459 U.S. at 7, 103 S.Ct. 276). "The Court rejected petitioner's contention that the 'due process ramifications' of his argument to the Michigan court 'were self-evident,' noting that the state court had interpreted the claim under principles that were entirely different from petitioner's federal due process theory." *Id.* (quoting *Anderson,* 459 U.S. at 7, 103 S.Ct. 276). The Court explained, "It is not enough that all the facts necessary to support [a] federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson,* 459 U.S. at 6, 103 S.Ct. 276 (internal citations omitted).

Similarly in *Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam), the Supreme Court "held that a habeas petitioner had not exhausted his federal due process claim when he argued before the state appellate court that the trial court's failure to sustain an evidentiary objection was a 'miscarriage of justice.'" *Jackson,* 404 F.3d at 619 (quoting *Duncan,* 513 U.S. at 364, 115 S.Ct. 887). "Rather than considering whether the evidence was so inflammatory as to prevent a fair trial, the state court merely asked whether its prejudicial effect outweighed its probative value—a state law question. Because the state and federal

*Cf. People v. Harris,* 98 N.Y.2d 452, 492, 749 N.Y.S.2d 766, 779 N.E.2d 705 (2002).

inquiries were 'no more than somewhat similar' rather than 'virtually identical,' the claim had not been fairly presented." *Id.* (quoting *Duncan,* 513 U.S. at 366, 115 S.Ct. 887 (internal citations and quotation marks omitted)).

In this case as in *Duncan,* the state and federal issues are not so similar that the constitutional claim was fairly presented to the state court. Unlike *Jackson v. Edwards,* where we recently held that "the failure to instruct the jury on justification was so harmful as to deny the defendant due process," 404 F.3d at 621, we cannot conclude that arguing a state law-based evidentiary error to the Appellate Division—the type of claim raised daily in that court—was enough to "unavoidably raise the entirety of [the] federal claim" now before us, *id.* Throughout his appellate brief, Smith's counsel classified the failure to admit the 911 call as "reversible error," but nothing more. Although the Appellate Division did not elaborate on its analysis of this claim, we can only conclude that, like other evidentiary claims, it would review the ruling to ensure that the trial court properly applied New York's rules of evidence to the facts of the case. *Vasquez,* 88 N.Y.2d at 573, 647 N.Y.S.2d 697, 670 N.E.2d 1328. This is a different analysis than the consideration of whether exclusion of the tape would be enough to deprive Smith of his constitutional right to present a meaningful defense. Smith never cited *Chambers v. Mississippi* or any of the subsequent cases involving that constitutional right. *Cf. Williams v. Lord,* 996 F.2d 1481, 1483 (2d Cir.1993). The very fact that the state and federal claims are similar "is insufficient to exhaust." *Duncan,* 513 U.S. at 366, 115 S.Ct. 887.

*Duncan* further noted that the failure to apprise the state court of the constitutional claim was "especially pronounced in that respondent did specifically raise a due process objection before the state court based on a different claim." *Id.* Like the respondent in *Duncan,* Smith raised a due process claim regarding another issue—grand jury presentation—but did not raise a constitutional claim regarding the exclusion of the 911 tape.

Examining petitioner's brief to the state appellate division as a whole, we simply cannot say that he has "fairly presented" to the state court the constitutional issue he now raises here. Accordingly, we must agree with the district court that his claim is procedurally defaulted.

### Conclusion

The district court's order of August 5, 2003, denying the petition for writ of habeas corpus is hereby **AFFIRMED.**